UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

VICTOR E. JOHNSON, SR.,

        Plaintiff,

    v.                                                                21-CV-606 (JLS)

C. LONG, Corr. Officer,
A. BURNS, Corr. Officer,
D. VENETTOZI, Dir. of SHU,

        Defendants.

─────────────────────────────

## DECISION AND ORDER

*Pro se* Plaintiff Victor Johnson, a prisoner confined at the Orleans

Correctional Facility, filed this action seeking relief under 42 U.S.C. § 1983. Dkt. 1.

He alleged that his rights under the Fourth, Eighth, and Fourteenth Amendments

to the United States Constitution were violated at the Wyoming and Orleans

Correctional Facilities ("Wyoming" and "Orleans"). The Court screened the

Complaint under 28 U.S.C. § 1915A, and (1) dismissed the Fourth Amendment

unlawful search and seizure claim with prejudice, and (2) dismissed with leave to

amend the Eighth Amendment conditions-of-confinement and deliberate

indifference to a serious medical need claims, and the Fourteenth Amendment due

process claim. Dkt. 5 ("Screening Order").

Johnson timely filed an Amended Complaint re-alleging the Eighth and

Fourteenth Amendment claims, and the Court must now screen it. For the reasons

set forth below: (1) Johnson's Fourteenth Amendment substantive due process claim is dismissed with prejudice under 28 U.S.C. § 1915A(b)(1) because it fails to state a claim upon which relief can be granted, (2) Johnson's Eighth Amendment conditions-of-confinement and deliberate indifference claims fail to state a claim upon which relief can be granted and will be dismissed with prejudice under 28 U.S.C. § 1915A(b)(1) unless he files a second amended complaint as directed below, and (3) the Fourteenth Amendment procedural due process claim against Defendants CO Burns, CO Long, and D. Venettozi[1] may proceed to service.

## DISCUSSION

## I. REVIEW OF THE AMENDED COMPLAINT

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however

---

[1] As set forth in the Screening Order, the Court has seen in other cases several alternative spellings of the name "Venettozi," but the Court spells it here as set forth in the caption.

unlikely it might be, that an amended complaint would succeed in stating a claim."
*Abbas*, 480 F.3d at 639 (internal quotation marks omitted); *see also Grullon v. City
of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] *pro se* complaint generally
should not be dismissed without granting the plaintiff leave to amend *at least once* .
. . .") (emphasis added)).   But leave to amend pleadings may be denied when any
amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.
2000).

   At this juncture, the Court must accept all factual allegations as true and
must draw all inferences in Johnson's favor. *See Larkin v. Savage*, 318 F.3d 138,
139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).
"Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair
notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v.
Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 555 (2007) (internal quotation marks omitted)); *see also Boykin v. Keycorp*, 521
F.3d 202, 216 (2d Cir. 2008) "[E]ven after *Twombly*, dismissal of a *pro se* claim as
insufficiently pleaded is appropriate only in the most unsustainable of cases.").
Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly
when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200
(2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements
of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73,
79 n.11 (2d Cir. 2004).

## II.    JOHNSON'S AMENDED COMPLAINT

The Amended Complaint alleges that, on February 23, 2020, Defendant Correctional Officer ("C.O.") Burns searched Johnson's shared cubicle at Wyoming while Johnson was at a personal visit. Dkt. 6, at 5, 8.[2]  Pursuant to Wyoming policy, "[c]ube" searches are to be conducted in the inmate's presence unless facility security dictates otherwise. *Id*. at 8. The Area Supervisor directed Burns to search Johnson's cubicle at the beginning of Burn's shift at 7:00 a.m., but Burns waited until 9:30 a.m. to search Johnson's cell, five minutes after Johnson left for his visit. *Id*. Burns dumped the contents of both of Johnson's and his cube-mate's lockers onto Johnson's bed, thereby co-mingling their personal property. *Id*. Burns claimed to find a "leafy green substance" in an empty protein bottle and Johnson was seized from the visiting area and brought to the Special Housing Unit ("SHU"). *Id*. Defendant C.O. Long tested the substance using a NARK II test. *Id*. at 9.

In 2019, the NARK II test had been found defective because it produced "false positives." *Id*. In 2020, "hundreds" of drug-related disciplinary infractions had been reversed because of the NARK II test, and Long and the New York State Department of Corrections and Community Supervision ("DOCCS") were aware that the NARK II test was "unreliable." *Id*. at 9. Johnson was served with a

---

[2] The Amended Complaint consists of the Court's Section 1983 Prisoner Complaint Form, *see* Dkt. 6, at 1-7, and an attachment further setting forth Johnson's allegations, *see id*. at 8-19. Page references are to those generated by the Court's Case Management and Electronic Filing System (CM/ECF).

misbehavior report charging him with violations of Inmate Rules 113.23 (Contraband) and 113.25 (Drug Possession). *Id.* at 8-9.

Johnson's Superintendent's Hearing began on February 26, 2020 and concluded on March 4, 2020. *Id.* at 6, 9. Johnson was not permitted to call his cubemate as a witness who would have "verified" that his and Johnson's property was comingled. *Id.* at 16. Despite knowledge that the NARK II test was unreliable, it was used to test the substance found in Johnson's cubicle. *Id.* Johnson was found guilty of both charges and sentenced to 49 days in SHU and a corresponding loss of privileges. *Id.* at 16-17. On April 1, 2020, Defendant D. Venettozi, Director of SHU, modified the disposition.[3] He dismissed the Contraband charge but affirmed that the Drug Possession charge did not change the penalty. *Id.* at 6, 10. On November 20, 2020—eighth months after the hearing—Venettozi, based on a review of the proceedings,[4] reversed the hearing in its entirety. *Id.* at 6, 10, 17.

During his SHU confinement at Wyoming, Johnson was subjected to conditions "far below" those afforded inmates in general population. *Id.* at 11. He

---

[3] The initial Complaint alleged that it was Rodriguez, Acting Director of SHU who modified the disposition following Johnson's administrative appeal. Dkt. 1, at 14; Dkt. 5, at 4-5. If Johnson files a second amended complaint, as directed below, he must clarify this inconsistency.

[4] Johnson does not indicate if this was a second review (appeal) of the hearing by Venettozi or the reason for the review. Based on the allegation that Venettozi first modified the hearing and then several months later reversed it in its entirety, it appears it was a second review of some kind. Pursuant to DOCCS Directives, an inmate shall have the right to appeal the disposition of a Superintendent's Hearing to the DOCCS commissioner or his designee within 30 days of the receipt of the disposition. N.Y. Comp. Codes R. & Regs. tit. 7, § 254.8, N.Y.C.H.R.R. § 254.8.

was placed in a "stay-locked" cell for 24 hours each day and was denied bedding and linen for the first seven days of his confinement.  *Id.*  He slept on a bare mattress with no "protective layers, his cell window was broken, and his cell was "often freezing."  *Id.*  His cell was also "filthy," the floor under the toilet was covered in human excrement, and he did not have running water for several days.  *Id.*  The toilet in the adjacent cell backed up when it was flushed.  *Id.*  He was denied cleaning supplies the entire time and each time he asked for them his request was denied.  *Id.* 11, 12.   He was denied all personal hygiene products for 12 days and was not allowed to shower until the 12th day.  *Id.*  He was denied access to the law library and grievance forms to complain about the conditions in SHU and was not permitted to use the telephone for eight days.  *Id.* at 11.  Inmates in general population have daily access to cleaning supplies, showers, and hygiene products, whereas SHU inmates generally are permitted the option of "cell-clean-up" every three days, a shower three times each week, and only a toothbrush, soap, and toothpaste.  *Id.* at 12.  Deodorant and lotion are allowed only on a shower day.  *Id.*

Prior to entering DOCCS custody, Johnson had suffered two strokes leaving him with "partial paralysis and greatly diminished mobility."  *Id.*  He had been provided physical therapy to improve his mobility.  *Id.*  During his SHU confinement, Johnson submitted daily sick call requests for medical assistance and to see a doctor and obtain permission to continue his physical therapy.  *Id.* at 12.  The requests were unanswered.  *Id.*  His inability to move around often left him with cramps so painful that he could not walk to his cell door and retrieve his meal

tray. *Id.* at 12-13. This occurred almost every day in the morning. *Id.* at 13. The cell was only 12 by 9 feet, which left him with very little space to walk. *Id.* This caused his physical state to deteriorate, and he needed physical therapy to improve his mobility and promote blood circulation. *Id.* Without physical therapy, he developed cramps and weakness and he was unable to perform normal activities, "such as standing up and walking to the toilet." *Id.* at 13. He complained daily about his "extreme discomfort" and how the conditions were harmful to his health, "to no avail." *Id.* DOCCS personnel were aware of his physical impairments and limitations, but nothing was done to address his concerns or the harsh conditions. *Id.*

Johnson sues CO Burns, CO Long, and SHU Director Venettozi for allegedly violating his rights under the Eighth and Fourteenth Amendments. *Id.* at 11-18. He seeks "monetary damages in the combined sum of $350,000, for pain and suffering and compensation for each day [he] was illegally confined to SHU custody." *Id.* at 5, 6.

## III. SECTION 1983 CLAIMS

To state a valid claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for

redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13

F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808,

816 (1985)).

To establish liability against an official under Section 1983, a plaintiff must

allege that individual's personal involvement in the alleged constitutional violation;

it is not enough to assert that the defendant is a link in the chain of command. *See*

*McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of

*respondeat superior* is not available in a Section 1983 action.  *See Hernandez v.*

*Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  No special rule exists to establish

supervisory liability—rather, "a plaintiff must plead and prove that each

Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020)

(internal quotation marks omitted).

## A. Eighth Amendment

Liberally construed, the Amended Complaint alleges that, while Johnson was

in SHU, he was subjected to standards and conditions far below those afforded

inmates in general population and that he was denied medical treatment—

specifically physical therapy, for his partial paralysis and limited mobility caused

by strokes suffered prior to his incarceration claim—in violation of the Eighth

Amendment.  Dkt. 6, at 11-12.  The Court construes Johnson's allegations as

alleging both a conditions-of-confinement claim and a denial of medical care claim.

*See* Dkt. 5, at 7.

1. <u>Conditions-of-Confinement</u>

As previously set forth in this Court's earlier Screening Order, the Eighth Amendment prohibits cruel and unusual punishments, but "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Rather, conditions of confinement "may constitute cruel and unusual punishment only when they result in unquestioned and serious deprivations of basic human needs . . . [which], alone or in combination, may deprive inmates of a minimal civilized measure of life's necessities." *Davidson v. Conway*, 318 F. Supp. 2d 60, 62-63 (W.D.N.Y. 2004) (quoting *Rhodes*, 452 U.S. at 347) (internal quotations marks omitted). "Restraints on an inmate do not violate the amendment unless they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain." *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984) (quoting *Rhodes*, 452 U.S. at 346) (internal quotation marks omitted). Discomfort and restrictive prison conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347.

Moreover, "'[n]ormal' conditions of SHU confinement do not amount to an Eighth Amendment violation." *Hattley v. Goord*, No. 02 Civ. 2339(WHP), 2006 WL 785269, at *6 (S.D.N.Y. March 27, 2006) (citing *Shannon v. Selsky*, 04 Civ. 1939, 2005 WL 578943, at *6 (S.D.N.Y. Mar. 10, 2005), and *Gulley v. Roach*, No. 02-CV-908S, 2004 WL 2331922, at *11 (W.D.N.Y. Oct. 15, 2004)); *cf. Jones v. D.O.C.C.S.*, 20-CV-1682-LJV, 2021 WL 1910239, at *9 (W.D.N.Y. May 12, 2021) (while noting that the standard conditions of SHU confinement do not set forth a constitutional

9

violation, finding that the plaintiff's allegations that, among other things, he was

housed in a cell covered with another inmate's feces, forced to clean up the feces,

and slept without a mattress while he was sick with COVID-19, set forth a claim

under the Eighth Amendment.)

This Court determined that Johnson's initial Complaint failed to state a

plausible Eighth Amendment violation because it "did not describe the conditions of

SHU" nor did it allege that Johnson's SHU confinement was "unusual[.]"  Dkt. 5, at

8.  The Amended Complaint does describe and plausibly allege that Johnson's SHU

confinement was unusual.  Johnson alleges, among other things, that his cell was

filthy with human excrement on the floor because the toilet from the adjoining cell

overflowed when flushed; he was denied cleaning supplies and hygiene products for

at least seven days; he was not permitted a shower until his 12th day in SHU; and

he was not provided any linen or blankets for his dirty mattress for seven days.

Dkt. 1, at 11.

Notwithstanding the new level of detail, Johnson fails to allege that any of

the named Defendants were responsible for the conditions in SHU.  *See Tangreti*,

983 F.3d at 618.  A plaintiff must plead that "each Government-official-defendant,

through the official's own individual actions, has violated the Constitution."  *Id.*

(quoting *Iqbal*, 556 U.S.  at 676).  The alleged constitutional "violation must be

established against the . . . official directly."  *Id.*  In an Eighth Amendment

conditions-of-confinement claim, the plaintiff must show that the defendant "acted

with deliberate indifference—meaning that the defendant personally knew of and

disregarded "an excessive risk to inmate health or safety." *Id.* (quoting *Vega v. Semple*, 963 F.3d 259, 273 (2d Cir. 2020)).

Defendants CO Burns and CO Long are alleged to have conducted an improper search of his cell and caused a false misbehavior report to be issued following an unreliable drug test. Defendant Venettozi allegedly failed to correct a flawed Superintendent's Hearing. None is alleged to have been aware of the conditions of Johnson's SHU confinement and failed to take any action to relieve Johnson of the risks those conditions posed.

Accordingly, the conditions-of-confinement claim must be dismissed. But because Johnson is *pro se* and has set forth plausible allegations of an Eighth Amendment violation, Johnson will be permitted one final opportunity to amend his pleading to state a claim against an individual or individuals, who through their own conduct, violated the Eighth Amendment. *See Baxter v. Wagner*, 802 F. App'x 32, 33 (2d Cir. 2020) (summary order) ("[S]ua sponte dismissal of a § 1983 claim is inappropriate if the complaint alleges that (1) the defendant was a state actor . . . when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." (internal quotation marks and citation omitted)); *see, e.g.*, *Akande v. U.S. Marshals Serv.*, 659 F. App'x 681, 685 (2d Cir. 2016) ("We therefore cannot conclude with confidence that [the plaintiff] cannot plausibly allege a viable cause of action. Accordingly, . . . [the plaintiff should] be given one more opportunity to amend his complaint to better articulate the facts he alleges and the legal bases for his

11

claims."); *Ong v. Park Manor (Middletown Park) Rehab. and Healthcare Ctr.*, 51 F.

Supp. 3d 319, 338 (S.D.N.Y. 2014) (discussing granting *pro se* plaintiff a second

opportunity to the amend the complaint to correct the deficiencies in the amended

complaint).

    2. <u>Denial of Medical Care</u>

    To show that prison medical treatment was so inadequate as to amount to

"cruel and unusual punishments" prohibited by the Eighth Amendment, a plaintiff

must prove that defendants' actions or omissions amounted to "deliberate

indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 102, 104

(1976). This standard includes both an objective and a subjective component. *See*

*Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991). For purposes of constitutional

violations, a serious medical condition exists where "the failure to treat a prisoner's

condition could result in further significant injury or the unnecessary and wanton

infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000)

(quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)). A medical need is

objectively "serious for constitutional purposes if it presents a condition of urgency

that may result in degeneration or extreme pain." *Montalvo v. Lamy,* 139 F. Supp.

3d 597, 606 (W.D.N.Y. 2015) (internal quotation marks and citations omitted).

Often, "the actual medical consequences that flow from the alleged denial of medical

care will be highly relevant to the question of whether the denial of treatment

subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*,

316 F.3d 178, 187 (2d Cir. 2003).

Under the subjective component of the deliberate indifference standard, a plaintiff must show a defendant acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). In other words, "the official must be both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind," *id.*, or "incompatible with the evolving standards of decency that mark the progress of a maturing society," *id.* at 102 (internal quotation marks omitted).

Johnson's Amended Complaint plausibly alleges, at this stage, that he suffered from a serious medical need—but it fails to allege that any named Defendant was deliberately indifferent to that need. The Amended Complaint states that Johnson submitted several unanswered sick call requests to see a physician in order to obtain physical therapy to treat his partial paralysis and limited mobility caused by two prior strokes. Dkt. 6, at 12-13. He also states that his small cell did not provide him enough space to walk and move around. *Id.* This led to stomach cramps that were so painful that during most days he could not walk to the meal slot and get his breakfast. *Id.* For purposes of screening, these facts, while alleging a serious medical need, do not allege that the named Defendants were aware of Johnson's prior strokes and need for physical therapy to address his

paralysis and limited mobility and failed to act to address the risk that serious harm could result from his condition.  Simply stated, there are no allegations that Defendants acted recklessly.  *See Salahuddin*, 467 F.3d at 280.

This claim must be dismissed.  But Johnson will be granted one final opportunity to amend his pleading and name an individual or individuals, if any, who were deliberately indifferent to his serious medical needs.  Simply alleging that the Defendants sued herein are liable because DOCCS was aware of Johnson's past strokes and need for physical therapy through possession of his medical records is insufficient to state an Eighth Amendment claim.

### B. Fourteenth Amendment

Johnson again alleges that Defendants violated his right to due process under the Fourteenth Amendment.  He alleges both a procedural and substantive violation.  Dkt. 6, at 16-17.

#### 1. Procedural Due Process

To state a cognizable Section 1983 procedural due process claim, a plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process.  *See Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).   A prisoner's liberty interest is implicated by prison discipline, including SHU confinement, only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *J.S. v. T'Kach*, 714 F.3d 99, 106 2d Cir. 2013) (first citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995); and then citing *Palmer v. Richards*, 364 F.3d 60,

64 (2d Cir. 2004)). In assessing whether the discipline imposed rises to this level, the Court of Appeals for the Second Circuit has directed the district courts to consider both the conditions of confinement and their duration, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Palmer*, 364 F.3d at 64 (quoting *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999)).

The Second Circuit has "explicitly avoided a bright line rule that a certain period of SHU confinement automatically fails to implicate due process rights." *Id.* at 64. It has "explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardships if the conditions were more severe than the normal SHU conditions . . . or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." *Id.* at 65. As a result, district courts are "required to examine the conditions of confinement in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." *Davis v. Barrett*, 576 F.3d 129, 134 (2d Cir. 2009) (internal quotations omitted). District courts are "required to examine the actual circumstances of confinement and to identify with specificity the facts upon which their conclusions are based." *Id.* (citation omitted). A detailed factual record is required unless the period of time spent in SHU was exceedingly short—less than

30 days—and there is no indication that the plaintiff endured unusual SHU conditions. *Id.* at 135 (quoting *Palmer*, 364 F.3d at 65-66).

Further, as addressed in the earlier Screening Order, a failure to follow internal prison rules or regulations related to the timeliness of the administrative review of a disciplinary hearing does not, in-and-of-itself, set forth a due process violation. Dkt. 5, at 12 (citing *Barnes v. Henderson*, 628 F. Supp. 2d 407, 411 (W.D.N.Y. 2009)).

The Screening Order determined that Johnson failed to describe his SHU conditions and that the conditions of his 49-day SHU confinement "were more onerous than usual" and thus he failed to allege liberty interest. *Id.* at 13. The Amended Complaint addresses this failure and sets forth several conditions to which Johnson was subjected that he claims were onerous and rose to the level of a liberty interest, despite a shorter period of confinement. For example, he alleges that he was not provided any linen or blankets for several days, his cell window was broken causing freezing temperatures in his cell, and there was human excrement on the floor of his cell caused by the adjacent cell's toilet overflowing when flushed. Dkt. 6, at 11. He also alleges he was denied cleaning supplies and hygiene products and could not shower for 12 days. *Id.* These conditions, he claims, were more onerous than those of inmates in general population and SHU. *Id.* at 11-12.

At this stage in the litigation and mindful of the Second Circuit's directives that *pro se* pleadings must be liberally construed, the Court finds that Johnson has set forth a liberty interest warranting due process protections. *See Palmer*, 364

F.3d at 64 (both the conditions of confinement and their duration must be analyzed, "since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical."); *see also Smith v. Arnone*, 700 F. App'x 55, 56 (2d Cir. 2017) (summary order) (Absent evidence of more onerous conditions, the Second Circuit has held that segregated confinement of less than the 30 days referenced in *Sandin*, does not implicate a protected liberty interest.).

Once a liberty interest is established, due process in the context of a prison disciplinary hearing generally requires that the prisoner be provided 24 hours written notice of the charges against him, the right to call witnesses and present documentary evidence, the aid of a staff member or inmate in presenting a defense, an impartial tribunal, and a written statement of the basis for the tribunal's decision. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). Johnson alleges that he was denied the opportunity to call his cubemate as a witness who would have verified that their property was commingled, and that CO Long was aware that the NARK II test was "defective" but used this same test to test the substance found in a protein bottle in Johnson's cube. Dkt. 6, at 16. The Court construes the latter allegation as claiming that there was insufficient evidence to support the hearing officer's finding of guilt.

Johnson also alleges that Venettozi's initial modification of the disciplinary hearing officer's disposition was arbitrary and capricious because it was inconsistent and did not support guilt on the Drug Possession charge. *Id.* at 16-17.

Venettozi dismissed the Contraband charge but not the Drug Possession charge. *Id.* This finding, Johnson posits, was illogical and not based on the facts. *Id.* at 17. "To dismiss [the] Contraband and affirm [the] Drug Possession would imply that [the] drugs are not classified as Contraband under DOCCS's [rule and regulations], which is logically unsound." *Id.* Eight months later, Venettozi reversed the hearing officer's disposition in its entirety. *Id.*

The Supreme Court has observed that, "[c]hief among the due process minima outlined in *Wolff* [i]s the right of an inmate to call and present witnesses . . . in his defense before the disciplinary board." *Elder v. McCarthy*, 967 F.3d 113, 124 (2d Cir. 2020) (quoting *Ponte v. Real*, 471 U.S. 491, 495 (1985)). An inmate's request to call witnesses may be denied due to "irrelevance or lack of necessity," or where "granting the request would be unduly hazardous to institutional safety or correctional goals." *Id.* (quoting *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991)). Further, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) ("[T]he 'some evidence' standard requires some 'reliable evidence.'") (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)). This standard is "extremely tolerant" and "is satisfied if there is any

evidence in the record that supports the disciplinary ruling." *James v. Bradley*, 808 F. App'x 1, 2 (2d Cir. 2020) (summary order) (quoting *Sira*, 380 F.3d at 69).[5]

The Court finds that, at this stage in the litigation, Johnson has alleged sufficient facts for a procedural due process claim based on a denial of the right to call witnesses and the lack of evidence to support the finding of guilt.

Next, the Court must address whether any of the named Defendants were personally involved in the alleged due process violation. Liberally construing Johnson's allegations, the Court reads Johnson's allegations as stating that Burns and Long caused a false misbehavior report to be filed against him and that Venettozi modified the hearing but left the sentence in place knowing that the hearing violated his due process rights. With respect to Burns and Long, Johnson cannot state a claim based solely on being written up on false misbehavior charges.

"[A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). A plaintiff must "show either (1) that he was disciplined without adequate due process because of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (internal quotation marks omitted). Because Johnson alleges that he was

---

[5] According to DOCCS's Directives, a positive result of "suspected contraband drugs" may be used as evidence in a disciplinary hearing "that the suspected substance is what the test result indicates." N.Y. Comp. Codes R. & Regs. tit. 7 § 1010.5 (2016), 7 N.Y.C.R.R. § 1010.5.

disciplined without adequate due process, the claims against Burns and Long may proceed to service.

As to Venettozi's modification of the hearing but affirmance of one of the charges and ultimate sentence, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Iqbal*, 556 U.S. at 676). While "'[t]he factors necessary to establish a [Section 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established against the supervisory official directly," *id.* "Failing to correct another officer's violation does not suffice." *Smart v. Annucci*, No. 19-CV-7908 (CS), 2021 WL 260105, at *5 (S.D.N.Y. Jan. 26, 2021) (noting that "even before *Tangreti*, affirming the outcome of a prison hearing was not sufficient to establish personal involvement.") (citation omitted).

Prior to *Tangreti*, the courts in this Circuit were "split over whether an allegation that a defendant affirmed a disciplinary determination [was] sufficient to establish personal involvement by the supervisory official." *Ortiz v. Prack*, 9:15-CV-291 (MAD/ATB), 2016 WL 11266739, at *4 (N.D.N.Y. Sept. 22, 2016), *report and recommendation adopted*, 2017 WL 1048085 (N.D.N.Y. Mar. 20, 2017) (collecting cases); *see generally Woodward v. Mullah*, No. 08-CV-0463A, 2009 WL 4730309, at *2-3 (W.D.N.Y. Dec. 7, 2009) ("The distinction between these cases appears to be that while personal involvement cannot be founded solely on supervision, liability can be

found if the official proactively participated in reviewing the administrative appeals as opposed merely to rubber-stamping the results.") (internal quotation marks omitted).

Following *Tangreti*, some courts have followed the line of cases holding that affirming the outcome of a prisoner disciplinary hearing is not sufficient to establish personal involvement, without addressing specifically whether the defendant merely rubber-stamped the hearing's disposition or was pro-active in reviewing the disciplinary hearing *See, e.g., Smart*, 2021 WL 260105, at *5 (the allegation that Venettozi denied the plaintiff's administrative appeal cannot support the inference that Venetozzi, through his own individual actions, has violated the Constitution); *Abdul-Halim v. Bruyere*, 9:19-CV-740 (MAD/ML), 2021 WL 3783087, at *3 (Aug. 26, 2021) (dismissing inmate's due process claim against Venettozi on summary judgment because the only allegation was that Venettozi affirmed the hearing but was not involved in the hearing); *Clark v. Gardner*, 9:17-CV-0366 (DNH/TWD), 2021 WL 1200328, at *23-24 (N.D.N.Y. Mar. 8, 2021) (Venettozi's and others' affirmance of the disciplinary hearing on administration review insufficient to establish personal involvement), *report and recommendation adopted by* 2021 WL 1198199 (Mar. 30, 2021).

While *Tangreti* clarified that there was no special rule for liability of supervisors under Section 1983 and that a defendant cannot be liable unless his "own individual actions, violated the Constitution[,]", *Tangreti*, 983 F.3d at 618, it did not address, the issue currently before the Court—*i.e.*, whether a defendant who

does more than merely rubber-stamp a disciplinary hearing can be liable for a due process violation. The claim that Venettozi violated Johnson's procedural due process rights may proceed to service. Venettozi allegedly dismissed the Contraband charge but affirmed the Drug Possession charge, left the SHU sentence in place, and later re-reviewed the hearing and dismissed it in its entirety. Dkt. 6, at 16-17. These allegations suggest that Venettozi did more than simply rubber-stamp the hearing officer's findings and disposition.

Additionally, because the Court must liberally construe the Amended Complaint to raise the strongest argument it suggests, Johnson will be permitted to amend the Amended Complaint to allege that other individuals may have been involved in the alleged due process violation—*e.g.*, the hearing officer.

2. <u>Substantive Due Process</u>

Johnson also alleges that Venettozi violated his right to substantive due process when he failed to dismiss the charges in their entirety, "which would have been the only logical (and legally plausible) decision when one considers the decision he did in fact make." Dkt. 6, at 17. To the extent Johnson intended to assert a separate substantive due process violation based on Venettozi's initial modification of the hearing, it must be dismissed with prejudice. Substantive due process "protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense," but "not against government action that is incorrect or ill-advised." *Tavares v. Amato*, 954 F. Supp. 2d 79, 98 (N.D.N.Y. 2013) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.

1994)). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (quoting *Okin v. Village of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009)). "Very few conditions of prison life are shocking enough to violate a prisoner's right to substantive due process." *Samms v. Fischer*, No. 10–CV–349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011), *report and recommendation adopted by* 2011 WL 3876522 (N.D.N.Y. Aug. 31, 2011). The Supreme Court provided only two examples in *Sandin v. Conner*: the transfer to a mental hospital and the involuntary administration of psychotropic drugs. *Id.* (citing *Sandin,* 515 U.S. at 479 n.4).

Johnson does not allege that the conditions of his SHU confinement or disciplinary hearing and charges were shocking or oppressive in the constitutional sense. This claim must be dismissed with prejudice. Leave to amend should be denied where amendment would be futile. *Cuoco*, 222 F.3d at 112 (finding leave to replead would be futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

## CONCLUSION

For the reasons set forth above, Johnson's Fourteenth Amendment substantive due process claim is dismissed with prejudice pursuant to 28 U.S.C. § 1915A because it fails to state a claim upon which relief can be granted.  In addition, Johnson's Eighth Amendment conditions-of-confinement and deliberate indifference claims must be dismissed pursuant to 28 U.S.C. § 1915A unless he files an amended complaint within **45 days after the date of the decision and order** in which he sufficiently pleads the those claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Johnson is advised that an amended complaint is intended to **completely replace** the prior complaint in the action.  "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  Therefore, Johnson's second amended complaint must include all of the allegations against each of the Defendants, so that the second amended complaint may stand alone as the sole complaint in this action which Defendants must answer.

Johnson is forewarned that if he fails to file a second amended complaint as directed, the Eighth Amendment conditions-of-confinement and deliberate indifference claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A

24

and service will be made of only the Fourteenth Amendment procedural due process claims against Defendants Burns, Long, and Venettozi.


## ORDER

IT HEREBY IS ORDERED Johnson's Fourteenth Amendment substantive due process claim is dismissed with prejudice; and it is further

ORDERED, that Johnson is granted leave to file a second amended complaint regarding his Eighth Amendment conditions-of-confinement and deliberate indifference claims as directed above[6] **within 45 days after this decision and order;** and it is further

ORDERED that the Clerk of Court is directed to send to Johnson with this decision and order a copy of the Amended Complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that in the event Johnson fails to file a second amended complaint as directed above **within 45 days after this decision and order**, the Eighth Amendment conditions-of-confinement and deliberate indifference claims will be dismissed under 28 U.S.C. § 1915A with prejudice without further order of the Court; and it is further

---

[6] Johnson is reminded that he must also include in a second amended complaint his Fourteenth Amendment procedural due process claims against Defendant Burns, Long, and Venettozi.   Because the second amended complaint will become the sole complaint in the action, it is the only complaint that will be served on the Defendants.   Failure to include these claims in it means that they will not be preserved for service on Defendants.

ORDERED that in the event Johnson fails to file a second amended complaint as directed above within 45 days of this decision and order, the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Amended Complaint, and this Order regarding the Fourteenth Amendment procedural due process claims upon Defendants Burns, Long, and Venettozi, without Johnson's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Johnson's favor;[7] and it is further

ORDERED that the Clerk of Court utilize the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website as needed; and it is further

ORDERED that the Clerk of Court is directed to forward a copy of this Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>; and it is further

ORDERED, that, pursuant to 42 U.S.C. § 1997e(g), Defendants, upon service, are directed to answer the Amended Complaint.

**SO ORDERED**.

DATED:    March 24, 2022
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.