2ND AMENDED COMPLAINT

CASE # 22-CV-142

ORIGINAL COPY

Revised 03/06 WDNY

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF NEW YORK

FORM TO BE USED IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983
(Prisoner Complaint Form)

UNITED STATES DISTRICT COURT
FILED
MAY 9 2022
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

All material filed in this Court is now available via the **INTERNET**. See **Pro Se Privacy Notice** for further information.

## 1. CAPTION OF ACTION

A.    **Full Name And Prisoner Number of Plaintiff:** NOTE: *If more than one plaintiff files this action and seeks in forma pauperis status, each plaintiff must submit an in forma pauperis application and a signed Authorization or the only plaintiff to be considered will be the plaintiff who filed an application and Authorization.*

1. Victor E. Johnson, Sr. 19-B-3065

2. _____

-VS-

B.    **Full Name(s) of Defendant(s)** NOTE: *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant. If you have more than six defendants, you may continue this section on another sheet of paper if you indicate below that you have done so.*

1. Corr. officer A. Burns
2. Corr. officer C. Long
3. Acting Director S.H.U. A. Rodriguez
4. Director S.H.U. D. Venettozi
5. Corr. officers Wyoming S.H.U. John Does
6. Medical staff Wyoming John Doe, Jane Does
   Hearing officer - Jane Doe

## 2. STATEMENT OF JURISDICTION

This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4), and 2201.

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION** NOTE: *To list additional plaintiffs, use this format on another sheet of paper.*

Name and Prisoner Number of Plaintiff: Victor E. Johnson, Sr. 19-B-3065

Present Place of Confinement & Address: Orleans Correctional Facility
3531 Gaines Basin Rd., Albion NY 14411-9199

Name and Prisoner Number of Plaintiff: _____

Present Place of Confinement & Address: _____

**DEFENDANT'S INFORMATION** NOTE: *To provide information about more defendants than there is room for here, use this format on another sheet of paper.*

Name of Defendant: _____ ( Please See Attached Defendants

(If applicable) Official Position of Defendant: _____ Information Sheet).

(If applicable) Defendant is Sued in _____ Individual and/or _____ Official Capacity

Address of Defendant: _____

_____

_____

Name of Defendant: _____

(If applicable) Official Position of Defendant: _____

(If applicable) Defendant is Sued in _____ Individual and/or _____ Official Capacity

Address of Defendant: _____

_____

_____

Name of Defendant: _____

(If applicable) Official Position of Defendant: _____

(If applicable) Defendant is Sued in _____ Individual and/or _____ Official Capacity

Address of Defendant: _____

_____

_____

## 4.  PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.    Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action?**
Yes_____   No ✓____

If Yes, complete the next section.  NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.    Name(s) of the parties to this other lawsuit:

Plaintiff(s):_____

Defendant(s):_____

_____

2.    Court (if federal court, name the district; if state court, name the county):_____

_____

3.    Docket or Index Number:_____

4.    Name of Judge to whom case was assigned:_____

2

5.    The approximate date the action was filed: _____

6.    What was the disposition of the case?

        Is it still pending?  Yes_____  No_____

            If not, give the approximate date it was resolved. _____

        Disposition (check the statements which apply):

        _____ Dismissed (check the box which indicates why it was dismissed):

               _____    By court *sua sponte* as frivolous, malicious or for failing to state a claim
                     upon which relief can be granted;

               _____    By court for failure to exhaust administrative remedies;

               _____    By court for failure to prosecute, pay filing fee or otherwise respond to a court
                     order;

               _____    By court due to your voluntary withdrawal of claim;

      _____ Judgment upon motion or after trial entered for

             _____ plaintiff

             _____ defendant.

**B.**    Have you begun **any other lawsuits** in **federal court** which **relate to your imprisonment?**
       Yes ✓   No____

**If Yes, complete the next section.** NOTE: *If you have brought more than one other lawsuit dealing with your imprisonment,
use this same format to describe the other action(s) on another sheet of paper.*

1.    Name(s) of the parties to this other lawsuit:

        Plaintiff(s): Victor E. Johnson, Sr. _____

        Defendant(s): Superintendent Titus - Orleans Corr. Fac.
        22-CV-142 JLS

2.    District Court: _____

3.    Docket Number: _____

4.    Name of District or Magistrate Judge to whom case was assigned: Hon. John L. Sinatra, Jr.
_____

5.    The approximate date the action was filed: 3/10/2022 _____

6.    What was the disposition of the case?

        Is it still pending?  Yes ✓  No____

            If not, give the approximate date it was resolved. _____

3

Disposition (check the statements which apply):

_____ <u>Dismissed</u> (check the box which indicates why it was dismissed):

        _____ By court *sua sponte* as frivolous, malicious or for failing to state a claim
upon which relief can be granted;

        _____ By court for failure to exhaust administrative remedies;

        _____ By court for failure to prosecute, pay filing fee or otherwise respond to a court
order;

        _____ By court due to your voluntary withdrawal of claim;

_____ <u>Judgment</u> upon motion or after trial entered for

        _____ plaintiff

        _____ defendant.

---

## 5. STATEMENT OF CLAIM

For your information, the following is a list of some of the most frequently raised grounds for relief in proceedings under 42 U.S.C. § 1983. (This list does not include **all** possible claims.)

| | | |
|---|---|---|
| • Religion | • Access to the Courts | • Search & Seizure |
| • Free Speech | • False Arrest | • Malicious Prosecution |
| • Due Process | • Excessive Force | • Denial of Medical Treatment |
| • Equal Protection | • Failure to Protect | • Right to Counsel |

**Please note that** it is not enough to just list the ground(s) for your action. You **must** include a statement of the facts which you believe support each of your claims. In other words, tell the story of what happened to you but do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995). **Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

---

### Exhaustion of Administrative Remedies

Note that according to **42 U.S.C. § 1997e(a)**, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prison er confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

You must <u>provide information</u> about the extent of your efforts to grieve, appeal, or otherwise exhaust your administrative remedies, and you must <u>attach copies</u> of any decisions or other documents which indicate that you have exhausted your remedies for <u>each</u> claim you assert in this action.

4

**A. FIRST CLAIM:** On (date of the incident) February 23, 2020

defendant (give the **name and position held** of **each defendant** involved in this incident) Corrections officer A. Burns And Corrections officer C. Long

did the following to me (briefly state what each defendant named above did): On the Above date, At Approximately 10:10 Am C.O. A. Burns conducted A cube Search on the plaintiffs living quarters (Wyoming C.F. [E-2-40B) Plaintiff was not present for this cube Search and the cause of his absence was not present for his cube search because plaintiff was on a visit, not due to a Facility Security need. Plaintiff resided in a "Double Bunk" cubicle, meaning the living space is shared by two (2) occupants. At some point See Attached

The constitutional basis for this claim under 42 U.S.C. § 1983 is: See Attached Constitutional Amended complaint

The relief I am seeking for this claim is (briefly state the relief sought): I Am Seeking Monetary Sum of 100,000 for pAin And Suffering And the Sum of $250.00 dollars for everyday spent I was illegally detained in SHU.

**Exhaustion of Your Administrative Remedies for this Claim:**

Did you grieve or appeal this claim? ✓ Yes _____ No  If yes, what was the result? Modified on 4/10/20 charge 113.23 dismissed, Admin. reversal 11/20/20.

Did you appeal that decision? _____ Yes ✓ No  If yes, what was the result? _____

*Attach copies of any documents that indicate that you have exhausted this claim.*

If you did not exhaust your administrative remedies, state why you did not do so: _____

**A. SECOND CLAIM:** On (date of the incident) On or About March 4, 2020

defendant (give the **name and position held** of **each defendant** involved in this incident) Acting Director SHU A. Rodriguez modified And dismissed charge 113.23 contraband. On or About November 20, 2020 D. Venettozi Director of SHU. reversed the hearing in its entirety And dismissed the possession 113.25

did the following to me (briefly state what each defendant named above did): On March 4, 2020 Plaintiff's Supt. Hearing concluded with the finding of guilt on the charges of Contraband (113.23) And Drug Possession (113.25), for which plaintiff received A sanction of 49 days SHU "keep lock" And loss of privileges. Plaintiff timely filed An appeal to the disposition And on 4/1/20 A decision was rendered by the Acting Director S.H.U. A. Rodriguez, And on November 20/2020 by Director SHU. D. Venettozi (See Attached Amended Claims).

The constitutional basis for this claim under 42 U.S.C. § 1983 is: See Attached Amended Constitutional Claims.

The relief I am seeking for this claim is (briefly state the relief sought): Seeking monetary damages In the sum of 250,000, for pain And suffering And denial of medical treatment, conditions of confinement, due process violations.

#### Exhaustion of Your Administrative Remedies for this Claim:

Did you grieve or appeal this claim? ✓ Yes _____ No   If yes, what was the result? Admin. reversal of the entire Misbehavior report on 11/20/20

Did you appeal that decision? _____ Yes ✓ No   If yes, what was the result? _____

*Attach copies of any documents that indicate that you have exhausted this claim.*

If you did not exhaust your administrative remedies, state why you did not do so: _____

**If you have additional claims, use the above format and set them out on additional sheets of paper.**

#### 6. RELIEF SOUGHT

*Summarize the relief requested by you in each statement of claim above.*

Claimant is seeking monetary damages in the combined sum of $350,000, for pain And suffering And compensation for each day claimant was illegally confined to SHU custody denied proper medical And physical therapy treatment.

Do you want a jury trial? Yes ✓ No _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _MAy 6, 2022_____
                      (date)

NOTE:  *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

                                _Victor E. Johnson, Jr_

                               Signature(s) of Plaintiff(s)

<u>Defendant's Information</u>

1. Corrections officer A. Burns
   N.Y.S. Corrections officer - Individual capacity wyoming corr. Facility 3203 Dunbar Road,
   P.O. Box 501, Attica, NY 14011.

2. Corrections Officer C. Long
   N.Y.S. Corrections Officer - Individual capacity wyoming corr. facility , 3203 Dunbar
   Road, P.O. Box 501, Attica, NY 14011.

3. A. Rodriguez - Acting Director of S.H.U. Acting Director of special housing unit -
   Individual capacity D.O.C.C.S 1220 Washington Avenue, Albany, Ny 12226.

4. D. Venettozzi - Director of special housing unit director of special housing unit -
   Individual capacity D.O.C.C.S. 1220 Washington Avenue Albany, NY 12226.

5. Correctional Officers Wyoming S.H.U. John Doe's, Jane Doe's unknown correctional
   officer S.H.U. known as John Doe's and Jane Doe's - Individual capacity.

6. Medical staff Wyoming corr. Facility known as John Doe's and Jane Doe's - Individual
   capacity

7. Hearing officer Wyoming corr. Facility individual capacity.

Second Amended Complaint

Conditions - of - Confinement

1. The Eighth amendment prohibits cruel and unusual punishments, Rhodes v. Chapman, 452 U.S. 337, 349 (1981), conditions of confinement "may constitute cruel and unusual punishment only when they result in unquestioned and serious deprivations of basic human needs. which , alone or in combination, may deprive inmates of a minimal civilized measure of life necessities." Davidson v. Conway, 318 F. supp. 2d 60, 62-63 (W.D.N.Y. 2004) (quoting Rhodes, 452 U.S. at 347). (Internal quotation marks omitted).

2. Plaintiff presses that such conditions of confinement were far below those afforded inmates in general population and that while being housed in S.H.U. plaintiff was denied medical treatment, specifically physical therapy, for his partial paralysis and limited mobility caused by two (2) strokes six (6) months prior to being transferred to N.YS.D.O.C.S.

3. That the medical dept at Wyoming was aware of plaintiff's medical condition when he was received at Wyoming C.F. That plaintiff after the strokes was left with many residual complaints and limitations. That among there were:

    A. Extreme Fatigue;
    B. Blood clot in the left side of brain requiring continuing evaluations;
    C. Limited visitation on right side
    D. Difficulty with coordination, especially when walking
    E. Diminished memory

4. That plaintiff had submitted at least a dozen sick call slips to be seen by a doctor and particular a Neurologist, Cardiologist, and Nephrologist due to abnormal renal readings associated in large part to the plaintiffs uncontrolled blood pressure.

5. That plaintiff was denied access to physical therapy until at least six (6) months. That plaintiff was able to finally meet with a Neurologist a year later.

6. That plaintiff had to take physical therapy for at least a year.

7. That plaintiff was seen by a Neurologist at the Wende Corr. fac. Who recommended that the plaintiff have surgery on his right shoulder as a result of falling on his right side during the course of his second stroke.

8. The D.O.C.S has scheduled the plaintiff to do surgery and to continue to do physical therapy to deal with the weakness in the right side leg as of April 11, 2022.

Denial of Medical care Eighth Amend. Claim

9. To show that prison medical treatment was so inadequate as to amount to "cruel and unusual punishments" prohibited by the eighth amendment, a plaintiff must prove that the defendants actions or omissions amounts to "deliberate indifference to serious medical needs" Estelle v. Gamble. 429 U.S. 97, 102, 104 (1973).

10. This standard includes both an objective and subjective component, see Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). For purposes of constitutional violations, a serious medical conditions exists where " the failure to treat a prisoner's condition coult result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Berkeley, 219 F. 3d 132, 136-137 (2d cir. 2000) (quoting Chance v. Armstrong, 143 F3d 698. 702 (2nd cir. 1998).

11. A medical need is objectively "serious for constitutional purpose if it presents a condition of urgency that may result in degeneration or extreme pain." Montalvo v. Lamy, 139 F. Supp. 3d 597, 606 (W.D.N.Y. 2015) (Internal quotation marks and citation omitted). " The actual medical consequences that flow from the alleged denial of medical care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." Smith v. Carpenter, 316 F 3d 178, 187 (2nd cir. 2003)

12. These were named Defendant, correctional officer A. Burns, Correctional officer C. Long; Director of S.H.U. D. Venettozzi acting director of S.H.U. A. Rodriguez along with correction officers who are now being named as John Doe's who worked the special housing unit between February 23, 2020 and March 19, 2020 who were personally involved in the care, custody, treatment and control of plaintiffs, there's correctional officer who were in control of the S.H.U. named as John Doe and Jane Doe's were responsible for the denial of medical treatment, under the subjective component of the deliberate indifference standard of plaintiff must show a defendant acted or failed to act " whilte actually aware of a substantial risk that serious innate harm will result." Salahuddin v. Goord, 467 F 3d 263, 280 (2d cir. 2006).

13. Plaintiff in his amended complaint now requested that his amended complaint be amended to include correctional officers named and identified as John Doe's who worked Wyoming corr. Fac. Special housing unit (S.H.U.) between February 23, 2020 and March 19, 2020 be added to this complaint along with medical staff of Wyoming corr. Fac. named as John Doe's and Jane Doe's who were aware of and supervised plaintiff medical needs while being housed in S.H.U. between February 23, 2020 and March 19 2020.

14. Plaintiff request to amend and add there people as they were aware of plaintiff's medical needs and refused to respond to repeated request for sick call and request to be seen by he doctor to evaluate plaintiffs conditions after plaintiff suffered from two (2) strokes just sx (6) months prior to being place in S.H.U. These medical staff were deliberately indifferent to plaintiff medical needs. As stated above plaintiffs was not allowed to see a

neurologist until a year later who recommended that plaintiff have surgery to repair his right behavior as a result of plaintiff falling on his shoulder in the cell after suffering a second stroke. Plaintiff was also informed on April 11, 2022 that he would have to seek additional physical therapy for the weakness in his right leg.

15. These defendants named and unnamed as John Doe's and Jane Doe's acted recklessly and not addressing plaintiffs' repeated request for medical attention through the use of facility sick call systems. These officials were deliberately indifferent to plaintiffs' serious medical needs. Eighth amendment violation claim.

16. C.O. A. Burns and C.O.C. Long along with A. Rodriguez, acting directors of S.H.U. and D. Venettozzi, director of the special housing unit (S.H.U.) The named defendants are directly or were directly involved with the confinement and housing to the special housing unit which caused and triggered an eight amendment violation of plaintiff constitutional rights, C.O. A. Burns and C.O.C. Long were well aware that a misbehavior report rather false or true would require that the plaintiff would be sent to the special housing unit (S.H.U) whereas the plaintiff would be subjected to harsh conditions and may constitute cruel and unusual punishment which resulted in serious deprivations of basic human needs. Which along or in combination deprived the plaintiff of a minimal civilized measure of life's necessitate. Davidson v. Conway, 318 F. Supp. 2d bo, 62-63 (W.D.N.Y. 2004) such that it involved the unnecessary and wanton infliction of pain" Smith v. cOUGHLIN, 748 F 2d 783, 787 (2d cir. 1984).

17. Testimony from inmate Lang and inmate Miles who witnessed the cube search testified that they observed C.O. A. Burns takes the contents from plaintiffs bunkie small locker and put them on plaintiffs bottom bunk, then C.O. Burns went into plaintiffs locker and also put his property on his bunk thereby co-mingling the property together and searching the property together. After being told by witnesses that she mixed the property C.O. A. Burns state she didn't give a fuck and told the inmates to get their black ass away from the area before they be next to go to the box (S.H.U.)

18. C.O. A. Burns also stated she runs the fucking box (S.H.U.) and she decides who goes to the box and warned them to away from the area.

19. C.O.C. Long falsely reported the testing of the substance found and signed his name on a test result information sheet. C.O. Long was aware that the Nark II test were found to be faulty and that the D.O.C.S. was recalling these test kits.

20. Both defendants A. Burns and C.O. Long was well aware of the conditions of S.H.U. having worked in S.H.U. personally. These defendants, through their own conduct, violated the eighth amendment. See Baxter v Wagner, 802 F. Appx' 32,33 (2d cir. 2020).

Procedural Due Process

21. To state a cognizable section 1983 procedural due process claim. A plaintiff must demonstrate that he possessed a protected liberty or property interest and that he was deprived of that interest without due process. See Bedoya v Coughlin, 91 F. 3d 349, 351-52 (2d cir. 1996). A prisoner's liberty interest is implicated by prison discipline, including SHU confinement, only if the discipline "imposes and atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." J.S. v. T'Kach 714 F 3d 99, 106 (2d cir. 2013). First citing sandin v. Conner, 515 U.S. 472, 484 (1995); And then citing Palmer v. Richards, 364 F 3d 60, 64 (2d cir. 2004).

22. In assessing weather the discipline imposed rises to this level, the court of appeals for the second circuit has directed the district courts to consider both the conditions of confinement and their duration, "Since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Palmer, 364 F. 3d at 64 (quoting sealey v. Giltner, 197 F. 3d 578, 586 2d cir 1999). The second circuit has explicitly avoided a bring line rule that a certain period of SHU confinement automatically fails to implicate due process rights." ID. at 64. It has " explicitly noted that SHU confinements of fewer than 101 days could constitute atypical and significant hardship if the conditions were more severe than the normal SHU conditions.. Or a more fully developed record showed that even relatively brief confinements under normal SHU conditions were, in fact, atypical." Id. at b5.

23. As a result, district courts are "required to examine the conditions of confinement in comparison to the hardships endured by prisoners in general population, as well as prisoners in administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." Davis v. Barrett, 576 F. 3d 129,134 (2d cir. 2009) (Internal quotations omitted).

24. District courts are "required to examine the actual circumstance of confinement and to identify with specificity the facts upon which their conclusions are based." Id. (citation omitted). A detailed factual record is required unless the period of time spent in SHU was exceedingly short - less than 30 days - and there is no indication that the plaintiff endured unusual SHU conditions Id. At 135 (quoting Palmer, 364 F. 3d at 65-66).

25. In this second amended complaint plaintiff addresses and adopts this claims addressed in the first amended complaint to which plaintiff Johnson sets forth several conditions to which plaintiffs were subjected that he claims were nervous and rose to the level of liberty interest, despite a shorter period of confinement.

26. For example, upon plaintiff detainment in the SHU in Wyoming correctional facility, plaintiff was subjected to standards and conditions far below that which is afforded to general population inmates. Plaintiff was placed in a cell behind a stay- locked seal door for a period of 24 hours a day.

27. Plaintiff was denied the following for his first seven (7) days: bedding and linen. Plaintiff was forced to sleep on a base mattress, with no protective layers, (plaintiff's cell window was broke and it was February, correctional office as of matter of punishment for compaints would often leave the recreation door to the rec pens open after they would smoke cigarettes and purposely leave the door open and turn the fan on the further freeze plaintiff and other inmates). Plaintiff cell was located next to the recreation door SH-UC-028.

28. (2) Plaintiff cell was filthy, with the floor area under the toilet covered in human excrement ( the toilet backed up whenever the toilet in the adjacent cell was flushed). The correction officer would shut the water off so there was no drinking water in the cell, the plaintiff would go days without drinking water as a punishment for filing complaints that went unanswered.

29. (3) Plaintiff begged corrections officers for cleaning products with which to make the living quarters habitable. (4) Plaintiff was denied writing materials, pen, paper and envelopes to contact his attorney and family as punishment and retaliation for complaining about his treatment and condition.

30. (4) Plaintiff was denied hygiene products (soap, toothpaste, wash rag and towel). The plaintiff was not permitted to shower until his 12th day in the SHU.

31. (5) Plaintiff was forced to walk with shackles and restraints at least a quarter of a mile from SHU to the visiting room with a disability on his right side from the strokes which further caused severe pain.

32. (6) Plaintiff requested to be driven to the visiting room with a limp and weak right side with leg restraints and shackles.

33. (7) Plaintiff was not permitted access to the law library and to the inmate grievance program. Plaintiff was denied access to the courts as he had deadlines that were missed as a result of being denied law library books and materials.

34. Based on this plaintiff was denied his fundamental rights to challenge his overly harsh and unjust treatment within the parameters set forth by law.

35. (8) Plaintiff was not permitted access to the phone until his 9th day in SHU confinement. Rendering plaintiff unable to contact his family to notify them of his situation and his need of assistance.

36. Plaintiffs living conditions were below that of general population inmates and even below the minimum standards prescribed by the facility operating manual with respect to SHU detainment.

37. Inmates in the general population can shower daily, whereas a SHU inmate is permitted three showers a week. Plaintiff was given no shower for a 12 day period.

38. Inmates in the general population have access to cleaning supplies all day during the 7-3pm and 3-11pm shifts, whereas SHU inmates are permitted the option of "cell clean-up" three times a week. Plaintiff was denied access to cleaning materials for the duration of his confinement in the SHU at Wyoming correctional facility.

39. Inmates in the general population are afforded the right to possess hygiene products, whereas SHU inmates are permitted a toothbrush, soap and toothpaste inside the living quarters, with lotion and deodorant available on "shower day". Plaintiff was denied all hygiene products, as well as the means to clean and groom himself for a period of twelve days.

40. Plaintiff often missed meals due to his inability to stand and walk over to the cell door to retrieve his meal tray. Plaintiffs inability to move around move appendages to improve circulation left him with cramps that were so painful, this happened almost every morning due to the pain and cramps being the worth at that time.

41. The standard SHU cell measures 12x9 feet, with half of the floor space being occupied by the bed, a desk/stool combination, a toilet/sink combination and in the case of a SHU 200 a shower. The remaining floor space being limited very little space in which to walk around and while this restriction to one's mobility poses little problem for the healthy and able-bodied the plaintiff in his diminished physical state caused by his two (2) strokes was greatly harmed by those conditions.

42. Due to the partial paralysis caused by the two strokes suffered by the plaintiff, physical therapy (which consisted of heavy walking and exercises that promote blood circulation) was required based on a doctor's authority. As stated earlier, plaintiff did not receive physical therapy until he was out of SHU.

43. Furthermore, plaintiff did not see a neurologist until at least a year ago who recommended surgery and continued physical therapy which plaintiff has done for at least a year.

44. Without the physical benefits provided by physical therapy the plantiff would develop cramps and weakness that prevented the plaintiff from performing normal physical activities such as standing up and walking to the toilet.

45. Plaintiff complained about his extreme discomfort and the fact that those conditions were detrimental to his health on a daily basis to no avail. Corrections personnel was well aware of the plaintiffs diminished state due to their access to his medical records and his medications, yet nothing was done on the part of the defendants or the department of corrections and community supv to address his concerns or the harsh conditions he was

being forced to endure. The lower court judge Hon. Richard C. Kolch, Sr. on the record September 27, 2019 stated I would be treated by medical staff once I was sent to DOCCS. (Please see transcripts Sept 27,2019). Whereas judge Kolch put it on the record that I would be seen by doctors when I am sent to prison, particularly his own personal doctor, Dr. Chang.

46. <u>Fourteenth Amendment Procedural due process Claims Cont.</u>
Against Defendants C.O. A. Burns, C.O. C. Long, A. Rodriguez- Acting director of S.H.U. D. Venettozzi - Director of S.H.U, John Does, unknown correction officers Wyoming S.H.U. John Does, Jane does unknown medical staff Wyoming Corr. Fac. Hearing officer.
Plaintiff hereby incorporates by reference all of the previous and foregoing paragraphs and further alleges as follows:

47. C.O. A. Burns alleges to have found a "green leafy substance" in an empty protein powder bottle. Upon notifying the area supervisor, security personnel seized the plaintiff from the visiting area and escorted him to the special housing unit. Once given notice of the charges leveled against him, plaintiff made the following contentions:

48. A. Cube searches are to be conducted in the presence of the cube occupant, unless a facility security need makes it necessary for the occupant to be elsewhere during the search. No such facility existed in the plaintiff case.

49. According to testimony given by D.O.C.C.S. personnel during the investigation process, the order to search plaintiffs cube was given by the area supervisor at the beginning of C.O. A. Burns shift, 7:00am. Plaintiff was not called for his visit until approx 9:30am. At 9:00am the plaintiff gave his I.D. card to C.O. Burns, and requested the iron so he could iron his clothes before the visit. C.O. Burns took plaintiffs I.D. card and handed him the iron.

50. C.O. Burns had two and a half hours to search the plaintiffs cube with him being present and in full compliance with the facility policy. Instead C.O. A. Burns chose to wait 5 minutes after the plaintiff left for his visit to conduct the cube search. By C.O. A. Burns own admission (on record) she dumped the contents of the small locker which belonged to plaintiff thus commingling the personala property of two (2) inmates. Plaintiff maintains that he is innocent of the allegations stated in the misbehavior report. At no time was the plaintiff in possession of any drug or drug related contraband. Furthermore, the plaintiff did not at the time relevant, own protein powder.

51. Plaintiff was aware of the contents of his locker secured with combination lock and plaintiff states for the record that there was no drugs or drug related contraband settled amongst his personal property. Furthermore, the plaintiff requested by the hearing officer (on the record) to submit to a drug urine test and blood sample to test for suspected drugs which was denied by the hearing officer.

52. C.O. Long conducted a hasty "Drug Field Test," under the Nark II testing apparatus. In 2019 it was discovered that this particular test was defective in that it produced false positives. In 2020 hundreds of drug related infractions were overturned as a result of this and the DOCCS was aware that this test was unreliable. In November of 2019, PLS of New York and the law firm of Emery, cell;, Brinckerhoff, Abady, Ward, and Manzel filed a lawsuit, Nadezda Steele - Warrick v. Microgenics corporation and Thermo - Fischer scientific, INC, In the U.S. District court (Eastern district of New York). The lawsuit alleges negligence claims against the companies that provided DOCCS with the defective drug tests.

53. Plaintiffs' hearing began on 2/26/2020 and concluded on 3/4/2020. Plaintiff entered a plea of not guilty and in spite of his contentions was found guilty of contraband (113.23) and drug possession (113.25) and sentenced to 49 days of SHU and loss of all privileges.

54. Plaintiff filed a timely appeal within a day of receiving his disposition. On April 1, 2020 my superintendent's hearing disposition was modified, dismissing the charge of 111.23 (contraband). This decision was rendered one month after the filing of my Tier III appeal, however, the charge of drug possession remained unchanged. This would lead the casual observer to believe that I was in possession of drugs and yet not in possession of contraband.

55. On November 20, 2020 after a second review my superintendent's hearing was administratively reversed. This reversal took place eight months after the timely filing of my appeal and after I had already endured the hardships of SHU.

56. On April 1, 2020 A. Rodriguez , acting director of SHU modified the disposition following plaintiffs administrative appeal to clarify the courts question and to clarify this inconsistency.

57. Plaintiff's second review (appeal) of the drug possession charge was dismissed based on this second review by D. Venettozzi. No reason was stated for the second review however based on information and belief the test by C.O. C Long was faulty and resulted in a false positive, however C.O. Long certified that the test was true and signed his signature to the false test report.

58. Pursuant to DOCCS directives, an inmate shall have the right to appeal the disposition of a superintendent's hearing to the DOCCS commissioner or his designee within thirty days of the receipt of the dispositions. N.Y. Comp. codes R & Regs. Tit. 7, 254.8, N.Y.C.H.R.R. 254.8.

59. Further, to dismiss the drug possession charge seven (7) months later, with no charge in circumstance or newly discovered evidence clearly alludes to a decision making process that in no way serves or promotes a legitimate government interest. The decision



rendered on November 20, 2020 should have been rendered on April 1, 2020. When the initial response to plaintiffs appeal was rendered.

60. However, if the plaintiff supt. Hearing was fair and impartial from its inception, then the plaintiff would have been spared having to endure forty-nine day of illegal SHU confinement.

61. No legal maxim concept or principle could be applied to the decision rendered by A. Rodrigue on April 1, 2020 and a complete reversal and dismissal on November 20, 2020 by director Venettozi that would make it legally sound and in compliance with plaintiffs fourteenth amendment protections.

# EXHIBIT A

```
 1   STATE OF NEW YORK    :    COUNTY OF NIAGARA
     SUPREME COURT
 2   ----------------------------------------------------
     THE PEOPLE OF THE STATE OF NEW YORK,
 3

 4              -VS-                    IND #s 2017-438-1 2019-179

 5   VICTOR E. JOHNSON,
                              Defendant.
 6   ----------------------------------------------------

 7                              175 Hawley Street
                                Lockport, New York
 8                              September 27, 2019

 9   B E F O R E:
                        HONORABLE RICHARD C. KLOCH, SR.
10                      Acting Supreme Court Justice

11
     A P P E A R A N C E S:
12

13                      CAROLINE A. WOJTASZEK, ESQ.,
                        Niagara County District Attorney,
14                      BY:   JOHN N. PHILIPPS, JR., ESQ.,
                        Assistant District Attorney,
15                      Appearing for the People.

16                      ROBERT VIOLA, ESQ.,
                        Appearing for the Defendant.
17
                        VICTOR E. JOHNSON,
18                      Defendant.

19

20

21

22

23

24

25                         LISA A. MULLANE
                     Official Supreme Court Reporter
```

1          MR. PHILIPPS:  Your Honor, the next matter on the

2   calendar is People of the State of New York versus Victor

3   Johnson, Indictment number 2018-438-1.  John Philipps on

4   behalf of the People.  Bob Viola's here on behalf of the

5   Defendant.  Defendant's present in the courtroom.  Your

6   Honor, this is the Defendant's bail motion.

7          MR. VIOLA:  That's correct, your Honor.  I know

8   your Honor has lived with this case for a year-and-a-half

9   and knows the facts of the case.

10          THE COURT:  Mr. Johnson, I spoke to the sheriff

11   specifically, as I told you I would.  He assured me that if

12   there's ever any acute need for care that you would have,

13   that he would make sure personally, he ensured that to me,

14   that you would get that type of care.  Okay.  He told me as

15   far as he knows, you're not in that need of care now.

16          I looked at the material that's been submitted to

17   me, Counselor.  And there's regular, routine doctor's

18   appointments that would be made.  You are headed for state

19   confinement.  And the state system, DOCCS, will have, you

20   know, medical people available and resources available to

21   take care of you adequately.  I've never lost a person that

22   I sent to jail yet in the thirty-four years.  So, I have

23   confidence in what they're going to do.  If you need care in

24   there, they'll take care of it.  In the interim, the sheriff

25   will take care of it.  So, I deny your motion respectfully.

K

1       MR. VIOLA:  May I just put --

2       THE COURT:  So, we have a -- we have a sentencing

3   date of October 9th and I'm going to sentence Mr. Johnson on

4   that day.

5       MR. VIOLA:  No.  I -- I -- I appreciate all of

6   that, Judge.  I just wanted the record to reflect that he

7   does have appointments that have been scheduled.  In all

8   candor, it has been the lack of response by the sheriff's

9   department, and I'll say it in open court, that may very

10  well have precipitated the second stroke that resulted in a

11  blood clot that couldn't be treated.  They were surprised

12  that, you know, given the nature of his complaints that it

13  dragged on for that long.  So, we -- we do not have any

14  confidence whatsoever, for whatever that's worth, that his

15  needs, as acute as they've been over the past several

16  months, would be met.  So, I just want the record to reflect

17  that it has not been the situation.

18          I've tried to get his records, haven't been able to

19  get them.  But I do know that he had a period of time when

20  he was being rushed every couple of days to the hospital.

21  And the last time there was some -- some concern that had

22  been expressed to his family that it appeared that they

23  permitted this to go on a little longer than it ought to.

24  And that's the concern we have.

25          His wife works at the hospital, so she's been

K

1    assured by at least one of the doctors who is in charge of

2    his overall care that they would see him as quickly as

3    possible if released.  So --

4            THE COURT:  Of course, I understand.  Listen, my --

5    my heart goes out to everybody, including Mr. Johnson, as

6    far as their well-being and as far as their health.  Those

7    two occasions were before I spoke to the sheriff.

8            And I spoke with him.  We had a very frank, intense

9    conversation.  And he assured me that he will make sure --

10   I've received phone calls back from him in regard to Mr.

11   Johnson.  So, he is definitely on -- he is definitely on the

12   sheriff's radar as far as providing for adequate care.  So,

13   I'm sorry.  That's the best I can do for you.

14           THE DEFENDANT:  Did the sheriff tell you he treated

15   me?  That he treated me?

16           THE COURT:  No.

17           THE DEFENDANT:  Did the sheriff tell you that he

18   left me on the floor for two-and-a-half hours in the SHU?

19           THE COURT:  No, he didn't tell me that.

20           THE DEFENDANT:  Did he explain that part to you?

21           THE COURT:  No, sir.

22           THE DEFENDANT:  Did they explain to you that they

23   gave me the wrong medication which caused the stroke?  Did

24   he tell you that?

25           THE COURT:  No, sir.  Again, I -- I did not speak

K

1  with him on those prior occasions.  I've now had a

2  conversation with him.

3        THE DEFENDANT:  My -- how could the sheriff speak

4  as a physician?  How could he speak as a physician?

5        THE COURT:  He's not speaking as a physician.  He's

6  assured me that if you are in need of acute care, he will

7  see to it that it's immediately taken care of.  I thanked

8  him for that.  I asked him to keep me in the loop and to get

9  back to me.  He did already once, reporting back.  So, I --

10  I'm assured that the conversation I had with him had some

11  weight.  So, we'll see.

12        What I want to do is I want to sentence you and

13  then the New York DOCCS can take care of you.  And they have

14  facilities.  You know, my physician, my own personal

15  physician who saved my life several times, Dr. Chang, left

16  practice.  You know what he left practice for?  He left the

17  practice to go and work for the penal institution.  So, now

18  in order to be treated by the doctor who saved my life

19  several times, I would actually have to get arrested,

20  convicted and sentenced to the facility where he is the

21  doctor.

22        So, if that doctor who saved my life several times

23  is in a state correctional facility, I'm sure that you will

24  have appropriate care.

25        THE DEFENDANT:  You know what puzzles me about this

1  whole entire thing, is that I'm -- I'm sitting here, I'm the

2  only one accused.  You allowed Tasheen Dillard her freedom a

3  couple weeks ago.  When, you know, the District Attorney's

4  Office, he didn't know that Tasheen Dillard was the main

5  player in this entire thing.  But you still allowed her

6  release.

7       You released me on a fifty thousand, hundred

8  thousand dollars bail.  I never missed court.

9       THE COURT:  Sir, respectfully, I disagree with you.

10  I think that you are the ringleader of this.  You admitted

11  to it and you're going to be sentenced.

12       THE DEFENDANT:  I mean, we could take my plea back

13  and we can go to trial, it's not a problem.

14       THE COURT:  You took a plea, sir, after being sworn

15  in on a Bible.  You admitted to the essential elements.

16       THE DEFENDANT:  And I wasn't --

17       THE OFFICER:  Sir, don't interrupt the Judge.

18       THE DEFENDANT:  And at the time I was not seen by a

19  physician to determine whether or not my mental capacity

20  was --

21       THE COURT:  I understand you're unhappy.  You have

22  my ruling, thank you.  Have a nice day.

23       MR. VIOLA:  Judge, the one last thing, I would just

24  mention that the whole history of this case has been an

25  abomination in terms of how the District Attorney has

1    created motion -- has filed motions that have resulted in

2    him being remanded.  And never ever has there been an

3    ability or an opportunity to cross-examine any of these

4    accusers.  And now all of those cases have been thrown by

5    the wayside because essentially they served their purpose of

6    having him remanded without bail and -- and -- and never

7    having to prove anything in connection with any of the

8    people that they made reference to.

9            So, it's been very upsetting, your Honor.  Only

10   because I don't think -- I don't like it when it's not fair.

11   And I'm not saying your Honor is not fair, because you deal

12   with what they give you.  And what I'm saying to you, your

13   Honor, is they've been unfair.

14           THE COURT:  Okay.  Thank you.

15           MR. VIOLA:  Thank you.

16           THE COURT:  Thank you, Counselor.

17           MR. PHILIPPS:  Thank you, your Honor.

18

19

20                    *       *       *

21

22       Certified to be a true and accurate transcript of the
     above-entitled matter.

23

24

25                         LISA A. MULLANE
                           Official Supreme Court Reporter