UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VICTOR E. JOHNSON, SR.,

        Plaintiff,

    v.                                      21-CV-606 (JLS)

A. RODRIGUEZ, Acting Director
S.H.U., *et al.*,

        Defendants.

_____

## DECISION AND ORDER

This decision and order addresses the New York State Attorney General's Office ("AG's Office")'s motion to modify the *Valentin* order in this case dated September 2, 2022. *See* Dkt. 18.

*Pro se* Plaintiff Victor E. Johnson, a prisoner confined at the Orleans Correctional Facility, filed this action under 42 U.S.C. § 1983 alleging that his rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution were violated during his imprisonment at the Wyoming and Orleans Correctional Facilities ("Wyoming" and "Orleans"). Dkt. 1. The Court granted Plaintiff permission to proceed *in forma pauperis*, *see* 28 U.S.C. § 1915(a)-(b), and proceeded to screen the original Complaint (Dkt. 1), First Amended Complaint (Dkt.

6), and Second Amended Complaint (Dkt. 9), under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Dkts. 5, 8, and 10.[1]

After Johnson filed the Second Amended Complaint, Dkt. 9, the Court screened it and directed the United States Marshals Service to serve the following claims: Johnson's Eighth Amendment conditions-of-confinement claim against the John Doe Wyoming Corrections Officers (once identified), Johnson's Eighth Amendment deliberate indifference claim against the John and Jane Doe Wyoming Medical Staff Members (once identified), and Johnson's Fourteenth Amendment procedural due process claim against Defendants Burns, Long, Venettozi,

---

[1] After screening the original Complaint, the Court (1) dismissed Johnson's Fourth Amendment search and seizure claim; and (2) granted Johnson leave to amend solely as to the Eighth Amendment conditions-of-confinement and deliberate indifference claims, and the Fourteenth Amendment due process claim. Dkt. 5.

Johnson then filed the First Amended Complaint and, after screening it, the Court (1) dismissed Johnson's Fourteenth Amendment substantive due process claim; (2) dismissed Johnson's Eighth Amendment conditions-of-confinement and deliberate indifference claims but with leave to amend to state a claim against an individual or individuals, who through their own conduct, violated the Eighth Amendment; and (3) determined that Johnson's Fourteenth Amendment procedural due process claim could proceed to service against Defendants Correction Officer ("CO") A. Burns, CO C. Long, and Director of SHU D. Venettozi, but with leave to amend to allege that other individuals may have been involved in the alleged due process violations. Dkt. 8 ("Second Screening Order").

Johnson then filed the Second Amended Complaint re-alleging the Eight and Fourteenth Amendment claims and adding Defendants A. Rodriguez, Acting Director SHU, John Doe Wyoming Correction Officers, John and Jane Doe Wyoming Medical Staff, and Jane Doe Hearing Officer to those claims. Dkt. 9. at 1, 8, 9, 10, 15. The Court screened the SAC. Dkt. 10 ("Third Screening Order").

Rodriguez,[2] and Jane Doe Wyoming Hearing Officer (once identified).  Dkt. 10.  The Court dismissed all remaining claims.  *Id.*

The Court also directed that, pursuant to *Valentin v. Dinkins*, 121 F.3d 72, 77 (2d Cir. 1997), the AG's Office ascertain the full names of the John and Jane Doe Corrections Officers and Medical Staff Members that Johnson sought to sue and provide addresses where the John or Jane Doe Defendants could currently be served.  Dkt. 10 at 10-11 ("*Valentin* Order").  Specifically, the AG's Office was directed to identify (1) the John Doe Wyoming Correction Officers who worked in Wyoming's SHU between February 23 and March 19, 2020, and subjected Johnson to the conditions alleged, and (2) the John and Jane Doe Wyoming Medical Staff Members "who were aware of and supervised [Johnson's] medical needs" and failed to respond to Johnson's repeated sick call requests.  *Id.* at 4-6, 7-8, and 10-11.

After moving for extensions of time to respond to the *Valentin* Order, *see* Dkts. 12, 15, the AG's Office moved, pursuant to Fed. R. Civ. P. 60(b)(6), to modify the *Valentin* Order "by relieving [the AG's Office] of the obligation to produce" information regarding the identities of the John Doe Wyoming Correction Officers who worked in Wyoming's SHU during the relevant period.  Dkt. 18; Dkt. 19, at 3.  The accompanying declaration further requests that Johnson be required to file an amended complaint providing identifying information about these correctional

---

[2] The Clerk's Office issued summonses as to Defendants Burns, Long, Rodriguez, and Venetozzi, and the Marshals Service attempted to serve these Defendants, but the summonses were returned unexecuted.  Dkt. 11.  The AG's Office will be directed to provide the Court with addresses where these Defendants can currently be served.

officers and allegations regarding how these correction officers violated Johnson's constitutional rights.[3] Dkt. 19, at 3.

For the following reasons, the motion is granted in part and denied in part.

## DISCUSSION

### A.    Valentin Order: Identifying John Doe Corrections Officers

Johnson's Second Amended Complaint named as Defendants John Doe Wyoming Correction Officers who worked in Wyoming's SHU between February 23 and March 19, 2020, and asked that leave be granted to include these John Does as defendants. Dkt. 9, at 10; *see* Dkt. 10 at 5-6. The Second Amended Complaint also re-alleged the conditions to which Johnson was subjected to in Wyoming's SHU that the Court previously found had stated a plausible Eighth Amendment violation.[4] Dkt. 9, at 12-13; Dkt. 8 at 10.

---

[3] The declaration also identified Nicole Heary as the Hearing Officer who conducted the disciplinary proceeding at Wyoming on March 4, 2020, and R.N. B. Szabo and R.N. Green as the nurses who worked the overnight shift at Wyoming during the relevant time periods. *Id.* at 2. The declaration further indicated that Heary can be served at the Wende Correctional Facility and Green can be served at Wyoming, but Szabo is no longer employed by DOCCS and the summons and Second Amended Complaint can be sent to DOCCS Counsel's Office, who then will forward them to Green at her last known address.

[4] These allegations included that Johnson was placed in a cell behind a stay-locked sealed door for 24 hours a day; he was denied bedding and linen and forced to sleep on a bare mattress with a broken cell window during the winter month of February for his first seven days in SHU; his cell was filthy with human excrement on the floor because the toilet from the adjoining cell overflowed when flushed; a correction officer shut off the water to his cell and he would go days without drinking water; he was denied hygiene products and cleaning products for at least seven days; and he was not permitted a shower for the first eleven days in SHU.

As noted in this Court's earlier order (Dkt. 10), plaintiffs are "freely permit[ted] . . . to initially name John Doe defendants and then amend their complaint to identify those John Does when discovery reveals their identities." *Catcove Corp. v. Heaney,* 685 F. Supp. 2d 328, 339 n.4 (E.D.N.Y. 2010). *Pro se* plaintiffs "routinely name John or Jane Doe defendants when they do not know the identities of the correctional officials they allege violated their rights and seek to sue." Dkt. 10, at 6. The Court further noted that in these fairly common situations—where the plaintiff has alleged a plausible claim against a John or Jane Doe defendant—the Court directs the AG's Office, in accordance with the Second Circuit's directives in *Valentin*, 121 F.3d at 76, to ascertain the identities of the John Doe defendant—assuming the plaintiff has provided sufficient information to identify the John Doe defendants. *Id.* at 6. "If the plaintiff does not provide sufficient information to identify the individual sought to be sued, the Court may grant the plaintiff inmate an opportunity to conduct discovery to learn the individual's identity." *Id.* at 6. Accordingly, in connection with Johnson's Eighth Amendment claim, the AG's Office was directed to ascertain the identities of these John or Jane Doe correctional officers. *Id.* at 6.

### B.    Motion to Modify *Valentin* Order

The AG's motion asks the Court to modify its earlier order (Dkt. 10), and direct Johnson to provide (1) additional identifying information about the John Doe Corrections Officers, and (2) allegations as to how each officer allegedly violated his Eighth Amendment rights. Dkt. 19, at 3. The declaration of Michael J. Russo, the

Assistant Attorney General, states that he reviewed the logbooks at Wyoming between February 23 and March 19, 2020, and worked with the Inmate Records Coordinator ("IRC") at Wyoming to ascertain the officers' identities. *Id.* Based on that review, Russo determined that there were fifty-eight employees who worked in Wyoming's SHU between February 23 and March 19, 2020. *Id.* ¶ 7. Russo notes that Johnson did not attempt to identify the corrections officers by first or last name, and implausibly could not "even provide any identifying information"—like gender, height, race, hair color, etc.—for the John and Jane Doe defendants. *Id.* Basically, Russo argues that, without Johnson providing some type of basic identifying information, the AG's Office must provide the names of all 58 correction officers or employees and that, in effect, Johnson is seeking to hold liable everyone who worked in Wyoming's SHU during the relevant period. *Id.* ¶ 8.

Johnson filed a response to Russo's Declaration asserting, *inter alia*, that (1) he cannot recall any particular name or names of the corrections officers because most of the officers in SHU did not wear their name tags; (2) he was only at Wyoming for three weeks before he was sent to SHU, so he was unable to familiarize himself with the corrections officers, "particularly SHU officers;" (3) prior to being sent to SHU, he suffered a traumatic brain injury after suffering two strokes and, therefore, he had memory problems and could not remember names; (4) he recalls that "most if not all correctional officers were white between the ages of 30-55," wore light blue shirts, and were assigned to the C-Block location where he was housed in cell C-28, the last cell next to the exit door to the recreation pens; and

6

(5) the cells blocks were equipped with security and surveillance cameras. Dkt. 20, at 2-3, 7. He further asserts that, despite Russo's assertions that many of the SHU officers would not have had any interactions with him, "every correctional officer who works in SHU make rounds in every block regardless if they work or are assigned to work the cell door controls for that day," and that each officer was aware of the treatment and conditions he was subjected to in SHU. *Id.* at 4-5.

Johnson states that he cannot provide any additional information regarding the identities of the John Doe Corrections Officers at this time and requests that he be provided photographs of the 58 SHU Officers identified by the IRC and Russo and the C-Block security or surveillance video during the period at issue. *Id.* at 3, 7. 22. If provided this information, he believes he could identify "certain correctional officers." *Id.* at 7-8.

Under Rule 54(b),[5] the Court "has inherent power to reconsider any of its own entries prior to the entry of a judgment adjudicating all the claims." *Blond v. Leonard*, 277 F. Supp. 3d 420, 423 (W.D.N.Y. 2017) (citing Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims . . .

---

[5] While the stated basis for the AG Office's Motion is Rule 60(b)(b), the Court construes the Motion as being brought under Rule 54(b). The decision and order at issue is not a "final judgment, order or proceeding" under Rule 60(b): nor is it a judgment as defined in Rule 54(a). *See Blond v. Leonard*, 277 F. Supp. 3d 420, 423 (W.D.N.Y. 2017) (construing the plaintiff's motion for reconsideration under Rule 54(b) because the prior decision and order, which dismissed some but not all the plaintiff's claims, was not a final judgment or order under Rule 60(b) nor a judgment as defined in Rule 54(a)). Here the AG's Office is not seeking to reconsider a final decision and order, but rather to reconsider and modify an interlocutory order, which directed it to provide information necessary to identify the John Doe defendants against whom this case can proceed.

does not end the action as to any of the claims . . . and may be revised at any time before the entry of a judgment adjudicating all the claims . . . .")). Under Rule 54(b), the decision to reconsider an interlocutory order is within the sound discretion of the Court.

## C.    Providing Additional Identifying Information

The instant motion requests that the Court order Johnson to provide additional identifying information that would enable Wyoming and the AG's Office to ascertain who, among the fifty-eight corrections officers identified in the logbooks, Johnson alleges violated the Eighth Amendment.

The Court agrees generally that Johnson *should* be required to provide additional information that would enable Wyoming and the AG's Office to ascertain the identities of the corrections officers. *See Lapoint v. Vasiloff*, No. 1:15-CV-185, 2016 WL 951566, at *5 (N.D.N.Y. Mar. 9, 2016) ("[T]he plaintiff is ultimately required to . . . provide sufficient factual basis to allow the defendants to successfully identify the John Doe Defendants and prepare for a defense.") (internal quotation marks omitted); *Gustaff v. MT Ultimate Healthcare*, No. 06 CV 5496(SLT)(LB), 2007 WL 2028103, at *2 (E.D.N.Y. June 21, 2007) (citations omitted) ("The Second Circuit has held that *pro se* litigants proceeding *in forma pauperis* are entitled to rely on service by the U.S. Marshals Service. However, plaintiff is required to provide the information necessary for the Marshals to effect service."), *report and recommendation adopted*, 2007 WL 2028104 (E.D.N.Y. July 11, 2007). Without some basic identifying descriptions of the corrections officers—

other than that they worked in Wyoming's SHU, C-Block between the relevant time-period, were generally white, and between the ages of 35-55—the AG's Office is unable to identify the actual individuals Johnson seeks to sue. As Russo contends, without some further information from Johnson, Johnson is, in effect, alleging that every corrections officer in Wyoming's SHU, C-Block between February 23 and March 9, 2020, violated his Eighth Amendment rights.

Johnson's response actually supports this contention—he asserts that "every correctional officer[] who works SHU made rounds in every block" and "each and everyone of these officers were aware of the treatment and conditions that they subjected [him] to and even given the argument that some may not have been involved, they all new of their fellow officers actions and failed to intercede." Dkt. 20, at 4. In the absence of a motion to file another amended complaint plausibly alleging how each of the fifty-eight corrections officers that could be identified from the logbooks violated his rights, the Court will not countenance the naming of all fifty-eight corrections officers as defendants.

That being said, Johnson states that, without photographs of the corrections officers who staffed Wyoming's SHU, C-Block, or security or surveillance video from C-Block, he cannot provide any additional information to identify the John Doe Corrections Officers. He claims that the corrections officers did not wear name tags, that he was not at Wyoming or in SHU long enough to familiarize himself with the corrections officers, and that he had suffered from two strokes affecting his memory.

Thus, directing Johnson to provide additional information at this time appears futile.

### D.    The District Court's Obligation under *Valentin*

In *Valentin*, the Second Circuit addressed the situation where an incarcerated plaintiff could not identify the police officer who allegedly assaulted him. 121 F.3d at 74-77. The district court had dismissed the *pro se* plaintiff's civil rights action against a defendant police officer with the New York City Police Department who allegedly assaulted the plaintiff because the plaintiff failed to provide a "more detailed description of [the] defendant" as previously ordered by the district court. *Id.* at 73. On appeal from the dismissal, "the Second Circuit made clear that a *pro se* litigant is entitled to assistance from the district court in identifying a defendant." *Jefferson v. Doe*, No. 08–CV–0204, 2010 WL 276198, at *1 (E.D.N.Y. Jan. 8, 2010) (citing *Valentin*, 121 F.3d 72). The district court "may pursue any course that it deems appropriate to a further inquiry into the identify of [unidentified defendant]"—particularly "where the plaintiff is incarcerated and is thus unable to carry out a full pre-trial investigation." *Id.* at 75-76.

The Second Circuit first noted that, while "[i]t is a general principle of tort law that a tort victim who cannot identify the tortfeasor cannot bring suit," this rule "has been relaxed . . . in actions brought by *pro se* litigants." *Id.* at 75. It then observed that a number of appellate courts "have found error in a trial court's refusal to assist a *pro se* plaintiff in identifying a defendant"—particularly so where the plaintiff is incarcerated and is thus unable to carry out a full pre-trial

10

investigation. *Id.* (collecting cases); *see also Maclin v. Paulson*, 627 F.2d 83, 87 (7th

Cir. 1980 (holding that when "a party is ignorant of defendants' true identity, it is

unnecessary to name them until their identity can be learned through discovery or

through the aid of the trial court"), *cited with approval by Maggette v. Dalsheim*,

709 F.2d 800, 803 (2d Cir. 1983) (stating that in *Maclin*, the Seventh Circuit

expressed the "preferable view").

The Second Circuit ultimately concluded that the district court abused its

discretion in dismissing the complaint against the unidentified police officer. 121

F.3d at 76. Because the plaintiff was able to provide the city with the officer's

surname,[6] the unit he was assigned, the date and location of the incident, and the

docket number of the criminal case, "at least some inquiry should have been made

as to whether such an officer exists and could readily be located." *Id.* at 75. The

Second Circuit noted that "the district court never determined whether the

information provided by [the plaintiff] was sufficient to discover [the police officer's]

identity, or if plaintiff could have done so with limited further discovery." *Id.* at 76.[7]

In remanding the case, the Second Circuit instructed the district court to evaluate

the plaintiff's pending interrogatories and the City's obligation to respond to them,

the effect of the information provided by the plaintiff regarding the identity of the

_____

[6] The Court recognizes that this is far more identifying information than what
Johnson has provided here.

[7] At oral argument, the plaintiff's court-appointed appellate counsel represented
that the plaintiff had furnished all the "particulars" about the police officer's
identity he possessed. *Valentin*, 121 F.3d at 74.

police officer, and "enlist the City's assistance" in unsealing the criminal case file. *Id.* The Court also noted the district court could consider the continuation of the appointment of counsel to explore the issues regarding the identification of the police officer. *Id.*

This Court and others in this circuit routinely rely on the language of *Valentin* to direct the AG's Office or other institutional counsel's offices, *e.g.*, County Attorney or Corporation Counsel offices, to ascertain the identifies of John Doe defendants where the inmate-plaintiff provides information sufficient to identify the John Doe defendants.[8] *See, e.g., Walker v. Williams*, 16-CV-645-FPG, 2018 WL 5095044, at * 2, *4 (W.D.N.Y. Oct. 19, 2018) (directing DOCCS to provide to the plaintiff information needed to correctly identify and serve several defendants and granting the plaintiff additional time to serve such defendants upon receiving the information from DOCCS).

The assistance that a district court is required to provide under *Valentin*, however, "is not limitless, particularly in an action's initial stages." *Lurch v. Doe Officers*, 22-CV-2324 (VSB), 2022 WL 17617837, at *1 (S.D.N.Y. Dec. 13, 2022). "[C]ourts routinely decline to issue 'Valentin Orders' where a plaintiff does not provide enough information to identify an unidentified defendant or where it does not appear that a plaintiff has stated a claim." *Id.* (collecting cases).

---

[8] In this district, without such appropriate assistance provided by the AG's Office in Buffalo and Rochester pursuant to the instructions in *Valentin*, many *pro se* prisoner civil rights cases would be dismissed against defendants that a plaintiff could not identify initially.

### E.    Application of *Valentin* to the Present Case

This case presents a difficult question.  When the Court issued the *Valentin*

order, it could not have known that there were fifty-eight individuals who worked in

Wyoming's SHU[9] during the relevant period—and that the AG's Office, along with

Wyoming's IRC, could not ascertain the identity of the John Doe Defendants beyond

that.  Generally, when the AG's Office cannot ascertain the identity of a John Doe

corrections officer, the Court would direct the plaintiff to provide further identifying

descriptors or other information regarding the corrections officers he seeks to sue.

Johnson states he cannot provide any additional information and ask for

photographs of the corrections officers and the C-Block security or surveillance

video between February 23 and March 19, 2020, which may assist him in

identifying the corrections officers.

Accordingly, the Court finds that, pursuant to the instructions in *Valentin*

that the court take "any course that it deems appropriate to further inquire into the

identify of" the unidentified defendants, *see* 121 F.3d at 75, it should first hear from

the AG's Office (1) whether Wyoming or DOCCS has photographs of the fifty-

corrections officers identified in the logbooks and any security or surveillance video

of Wyoming SHU, C-Block between February 23 and March 19, 2020; and, if so, (2)

whether there is any basis not to disclose the photographs or security video to

Johnson for his review.  *See Kaplan v. City of New York*, No. 14-Civ. 4945 (RJS),

---

[9] The Court is not certain whether the number 58 represents only corrections officers
or both corrections officers and other employees in Wyoming's SHU, C-Block where
Johnson was held or throughout Wyoming's SHU.  *See* Dkt. 19, at 3.

2018 WL 2084955, at 5 n.2 (S.D.N.Y. Mar. 22, 2018) ("In keeping with the spirit of *Valentin* . . . the City provided Plaintiff with copies of [defendant]'s photo and those of other officers who were on duty at the [jail]on the night of July 10, 2013, and asked Plaintiff to identify any officers whom he regarded as those who ignored his reports of assault."); *Medina v. Gonzalez*, 08 Civ. 01520(BJS)(KNF), 2010 WL 3744344, at *16 (S.D.N.Y. Sept. 23, 2010) (summarizing that during discovery court directed defendants to provide "all photographs of corrections personnel . . . shall be displayed to the plaintiff to assist him in identifying further corrections personnel who participated in the events that gave rise to this action").

The AG's Office shall provide a response to this Order within **30 days**. The response shall indicate (1) whether Wyoming or DOCCS has photographs of the fifty-eight corrections officers identified from the logbook that worked in Wyoming's SHU, C-Block between February 23 and March 19, 2020, (2) whether Wyoming or DOCCS has security or surveillance video of Wyoming's SHU, C-Block between that same time period, and (3) if Wyoming or DOCCS has these photographs and/or surveillance video, whether there is a reason(s) it cannot to disclose them to Johnson and, if so, what those reason(s) are.

Following the filing of the AG's Office response to this Order, the Court will address how it should proceed further with respect to the identification of the John Doe Corrections Officers, if reasonably possible,[10] including, but not limited to,

---

[10] If the Court finds it appropriate and necessary, Johnson will be provided an opportunity to respond to the AG Office's response.

appointing *pro bono* counsel for the limited purpose of conducting discovery to identify the corrections officers. *See Valentin*, 121 F.3d at 76 (citing *Bilman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) (indicating that appointment of counsel is one "possibility" for a district court to consider when a *pro se* complaint does not designate the appropriate defendant); Loc. R. Civ. P. 83.8 (setting forth this Court's procedures for appointment of *pro bono* counsel).

## F.    Request To Have Johnson File a Third Amended Complaint

The AG Office's motion also requests that the Court direct Johnson to file a third amended complaint to assert allegations regarding how each of the John Doe Correction Officers violated his Eighth Amendment rights. Dkt. 19, at 6. The Court twice has determined that Johnson alleged a plausible Eighth Amendment violation based on the conditions alleged in Wyoming's SHU. The Court finds no basis to reconsider that conclusion at this time.[11] *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (reconsideration of a prior decision is generally justified in any one of the following three circumstances: (1) an intervening change in controlling law; (2) new evidence; or (3) the need to correct a clear error of law or to prevent manifest injustice.). That portion of the AG's motion is denied.

---

[11] If it is determined later that the corrections officers cannot be identified and served, the Second Amended Complaint may be dismissed without prejudice against the John Doe Correction Officers Johnson seeks to sue. Furthermore, if some of the corrections officers can be identified and served, they can participate in further discovery regarding the identities of other correctional officers and/or file a motion to dismiss or for summary judgment if appropriate.

**ORDER**

IT IS HEREBY ORDERED that the AG Office's motion to modify the *Valentin* Order is granted in part and denied in part;

FURTHER, that **within 30 days of the date of this Decision and Order**, the New York State Attorney General's Office shall provide a response to this Order. The response shall state (1) whether Wyoming or DOCCS has photographs of the fifty-eight corrections officers or employees identified from the logbooks that worked in Wyoming's SHU, C-Block between February 23 and March 19, 2020, (2) whether Wyoming or DOCCS has security or surveillance video of Wyoming's SHU, C-Block between that same time period, and (3) if Wyoming or DOCCS has these photographs and/or security or surveillance video, whether there is a reason not to disclose them to Johnson for the limited purpose of identifying the John Doe Corrections Officers and, if so, what the reason(s) is;

FURTHER, that the Clerk of Court is directed to amend the caption of this action to include "Nicole Heary, Wende Correctional Facility," in the place of "Hearing Officer Jane Doe," and "R.N. Green, Wyoming Correctional Facility," and "R.N. B. Szabo" in the place of "John Doe, Jane Does Medical Staff Wyoming;"

FURTHER, that the Clerk of Court is directed to cause the United States Marshals Service to serve copies of the Summons, Second Amended Complaint, this Decision and Order and the Decision and Orders entered August 25, 2021 (Dkt. 5), March 24, 2022 (Dkt. 8), and September 2, 2022 (Dkt. 10), on Defendant Nicole Heary at the Wende Correctional Facility, and R.N. Green, at the Wyoming

Correctional Facility without Johnson's payment thereof, unpaid fees to be recoverable if the action terminates by monetary award in Johnson's favor;

FURTHER, the Clerk of Court shall use the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website, http://www.doccs.ny.gov/faclist.html;

FURTHER, that the Clerk of Court shall forward the Summons and Second Amended Complaint to the New York State Department of Corrections and Community Supervision, 1220 Washington Avenue, Albany, New York 12226, who then is directed to forward the Summons and Second Amended Complaint to R.N. Szabo at her last known address;

FURTHER, that the New York State Attorney General's Office shall provide addresses at which Defendants A. Rodriquez, C. Long, A. Burns, and D. Venettozi can currently be served, and, upon receipt of this information, the Clerk of Court will amend the summonses and cause the United States Marshals Service to serve the Summons, Second Amended Complaint, this Decision and Order and the Decision and Orders entered August 25, 2021 (Dkt. 5), March 24, 2022 (Dkt. 8), and September 2, 2022 (Dkt. 10) on Rodriguez, Long, Burns, and Venettozi without Johnson's payment thereof, unpaid fees to be recoverable if the action terminates by monetary award in Johnson's favor;

FURTHER, the Clerk of Court shall forward a copy of this Decision and Order by electronic mail to Michael J. Russo, Assistant Attorney General in Charge, Buffalo, Office, Michael.Russo@ag.ny.gov; and

17

FURTHER, that upon service, pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to respond to the Second Amended Complaint.[12]

SO ORDERED.

Dated:      April 28, 2023
            Buffalo, New York

            _____
            JOHN L. SINATRA, JR.
            UNITED STATES DISTRICT JUDGE

---

[12] Pursuant to a Standing Order of Court, filed September 28, 2012, a defendant will have 60 days to file and serve an answer or other responsive pleading, *see* Fed. R. Civ. P. 12(a)-(b), if the defendant and/or the defendant's agent has returned an Acknowledgment of Receipt of Service by Mail Form within 30 days of receipt of the summons and complaint by mail pursuant to N.Y.C.P.L.R. § 312-a.