UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

VICTOR E. JOHNSON, SR.,

                            Plaintiff,

v.

  A. RODRIGUEZ, *et al.*,

                           Defendants.

**REPORT AND
RECOMMENDATION**

1:21-cv-00606(JLS)(JJM)

      Plaintiff, Victor E. Johnson, Sr., an inmate, commenced this 42 U.S.C. §1983

action *pro se* for alleged civil rights violations arising from his incarceration at the Wyoming and

Orleans Correctional Facilities. Complaint [1].[1]  Before the court is defendants' motion for

partial dismissal of the Second Amended Complaint [9], with prejudice, pursuant to Fed. R. Civ.

P. ("Rule") 12(b)(6) [33], which has been referred to me by District Judge John L. Sinatra, Jr. for

initial consideration [34].  Having considered the parties' submissions [33, 37, 38], I recommend

that the motion be granted in part.

### BACKGROUND

      Johnson alleges that he suffered two strokes in the six months prior to his transfer

into the custody of the New York State Department of Corrections and Community Supervision

that left him with various residual effects, including "[e]xtreme fatigue", a "[b]lood clot in left

side of [his] brain requiring continuing evaluations", "[l]imited visi[on] on right side",

---

[1]     Bracketed references are to CM/ECF docket entries, and page references are to CM/ECF
pagination.

[d]ifficulty with coordination, especially when walking", and "[d]iminished memory". Second Amended Complaint [9] at 9, ¶¶3-4; 10, ¶14.  He alleges that during his placement into the Special Housing Unit ("SHU") at the Wyoming Correctional Facility from February 23 to March 19, 2020, the medical staff at Wyoming (identified as John and Jane Does) were "aware of and supervised [his] medical needs while being housed in S.H.U.". Id. at 10, ¶13.

Notwithstanding their alleged awareness of Johnson's medical needs, the medical staff "refused to respond to repeated request[s] for sick call and request to be seen by [t]he doctor to evaluate [his] conditions". Id., ¶14. *See also* id. at 11, ¶15 ("John Doe's and Jane Doe's acted recklessly . . . [by] not addressing [his] repeated request for medical attention through the use of facility sick call systems"); at 9, ¶4 ("plaintiff had submitted at least a dozen sick call slips to be seen by a doctor and [in] particular a Neurologist, Cardiologist, and Nephrologist due to abnormal renal readings associated in large part due to [his] uncontrolled blood pressure"); at 9, ¶2 ("while being housed in S.H.U. plaintiff was denied medical treatment, specifically physical therapy, for his partial paralysis and limited mobility").

Thereafter, Johnson alleges that he continued to be denied physical therapy for "at least six . . . months", and that in April 2022 he was informed that he "would have to seek additional physical therapy for the weakness in his right leg".  He also alleges that when he eventually saw a neurologist "a year later", the neurologist "recommended that [he] have surgery to repair his right behavior [*sic*] as a result of [him] falling on his shoulder in the cell after suffering [the] second stroke".  Id. at 9, ¶5; 11, ¶14.

In screening the Amended Complaint pursuant to 28 U.S.C. §1915A,[2] Judge Sinatra concluded that Johnson plausibly alleged a serious medical need and directed the New York State Attorney General's Office ("OAG") to provide information concerning the identity of the John and Jane Doe defendants pursuant to Valentin v. Dinkins, 121 F.3d 72, 76 (2d Cir. 1997). September 2, 2022 Decision and Order [10] at 10-11.[3]  In response, the OAG stated "[u]pon information and belief, there were two nurses who worked the overnight shift at Wyoming during the relevant time period: (1) R.N. W. Green; and (2) R.N. B. S[zabo]". Russo Declaration [19], ¶5.[4]  Judge Sinatra directed that the Second Amended Complaint be deemed amended to name these defendants. [10] at 7-8, 12.

This motion seeks to dismiss the deliberate indifference claim against defendants Green and Szabo[5] due to the Second Amended Complaint's failure to allege their personal involvement or to otherwise state a claim against them. Defendants' Memorandum of Law [33-1], Point I.

---

[2]    "A court's initial screening of a complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) does not preclude a later dismissal pursuant to Rule 12(b)(6)." Tisdale v. Hartley, 442 F. Supp. 3d 569, 572-73 (W.D.N.Y. 2020).

[3]    Pro bono counsel was appointed to Johnson on a limited scope basis to help him identify the John and Jane Doe defendants [32].  It is not clear from the docket whether that appointment has been completed.

[4]    Although the response to the Valentin Order identified Nurse "Sabzo", the defendants' motion identifies her as Nurse "Szabo", the spelling also used in the Summonses. See May 5 and October 20, 2023 entries.

[5]    These are the only two defendants who have appeared in the action thus far.  Other defendants appear to have been served (see [36]), but have not yet appeared and no entry of default has been obtained.

## DISCUSSION

**A.     Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id</u>.

Although courts "afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled". <u>Darby v. Greenman</u>, 14 F.4th 124, 130 (2d Cir. 2021). *See also* <u>Thomas v. Calero</u>, 824 F. Supp. 2d 488, 497 (S.D.N.Y. 2011) ("the 'plausibility' standard . . . applies to the pleadings of *pro se* plaintiffs as well as to those of represented litigants").

**B.     Deliberate Indifference**

An Eighth Amendment claim arising out of inadequate medical care to an inmate requires the plaintiff to demonstrate that a defendant was deliberately indifferent to a serious medical need. *See* <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  The deliberate indifference standard has both objective and subjective components. *See* <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).

To satisfy the objective component, the alleged medical need must be "sufficiently serious" - *i.e.*, the medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain". Id. "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

"[W]here the alleged injury stems from an unreasonable delay in treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. To determine whether a delay or interruption in treatment is sufficiently serious, the actual medical consequences that flow from the alleged denial of care will be highly relevant." Massey v. Michele, 2022 WL 1493269, *5-6 (S.D.N.Y.), adopted, 2022 WL 4292506 (S.D.N.Y. 2022).

To satisfy the subjective component, a plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" Id. *See also* Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003) (likening the necessary state of mind to "the equivalent of criminal recklessness").

In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Consequently, "[f]or a claim based on a delay in medical treatment, a defendant must have been aware of a substantial risk that the inmate would suffer serious harm because of his or her actions or inactions". <u>Zafrin v. Department of Corrections</u>, 2023 WL 2868050, *3 (D. Conn. 2023). *See also* <u>Amaker v. Coombe</u>, 2002 WL 523388, *8 (S.D.N.Y. 2002) ("[a] delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment").

       "The totality of an inmate's medical care must be considered in order to determine whether a prison official has acted with deliberate indifference to serious medical needs". <u>Wandell v. Koenigsmann</u>, 2000 WL 1036030, *3 (S.D.N.Y. 2000). "Prison medical staff is given wide discretion in determining how to treat inmates." <u>Williams v. Smith</u>, 2009 WL 2431948, *9 (S.D.N.Y. 2009). Thus, "mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation". <u>Chance</u>, 143 F.3d at 703. Nevertheless, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan". <u>Id</u>.


**C.     Sufficiency of the Allegations Against Nurses Green and Szabo**

       "To establish a section 1983 claim, a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity." <u>Warren v. Pataki</u>, 823 F.3d 125, 136 (2d Cir. 2016).  Johnson's conclusory

allegations are insufficient to state a claim against Nurses Green and Szabo.  Other than generally alleging that they were part of Wyoming's medical staff who were "aware of and supervised [his] medical needs" during the 25 days of his SHU confinement (Second Amended Complaint [9], ¶13), there are no allegations concerning their particular roles in his care or their personal involvement in his sick call requests.  Likewise, few details are alleged as to the content of Johnson's sick calls.  Without more, Johnson fails to allege the personal involvement of Nurses Green and Szabo or their deliberate indifference.

Similarly, in Darby, *supra*, the plaintiff alleged that "the Doe Defendants ignored approximately fifteen sick call requests that he submitted 'to follow up on his worsening condition,' . . .  and three or four grievances that 'described in detail the worsening pain and suffering he was experiencing'". 14 F.4th at 130.  In concluding that the plaintiff failed to allege that the Doe Defendants acted with deliberate indifference, the Second Circuit explained that "[t]he complaint does not specify when [the plaintiff] submitted the sick call requests, to whom he submitted them, or what information they conveyed". Id.  To permit the "claims against the Doe Defendants to proceed, we would have to assume the elements of liability. Specifically, we would need to assume that (1) the Doe Defendants actually received and read [the] requests; (2) the requests described the seriousness of [the plaintiff's] condition in such a way that the Doe Defendants knew or should have known that doing nothing would risk substantial harm; and (3) the Doe Defendants' failure to take action in response to [the plaintiff's] requests was reckless". Id.

As currently pled, similar assumptions would be necessary to conclude that Nurses Green and Szabo were deliberately indifferent to Johnson's medical needs during his 25 days of SHU confinement. *See* Barker v. Doe, 2015 WL 6801815, *4 (N.D.N.Y. 2015) ("the

Complaint is void of any facts establishing when or to whom Plaintiff made sick call requests, the nature of his requests, and when/why the requests were denied. Plaintiff's conclusory allegations that 'nobody did anything' are insufficient to state a claim for a constitutional violation"); Morales v. Connecticut Department of Corrections, 2022 WL 16635388, *4 (D. Conn. 2022) (the plaintiff "alleges generally that he did not receive treatment for his broken leg for more than two months and that he made complaints and requests for treatment that went unanswered while he was held in custody at various facilities. However, he does not identify when he submitted the requests, to whom he submitted them, or any facts tending to show that any of the defendants actually received his requests or heard his complaints").

The only specification that Johnson provides concerning the alleged content of his sick call slips is that he sought to see a specialist "due to abnormal renal readings" associated with his "uncontrolled blood pressure" during the 25 days of his SHU confinement. Second Amended Complaint [9], ¶¶4, 13. Without more, these allegations are insufficient to establish deliberate indifference. *See* Sloley v. Seeley, 2018 WL 6582828, *3 (N.D.N.Y. 2018) (where the Amended Complaint alleged that "for six months, defendants ignored his high blood pressure, failed to notify him that his blood pressure was elevated, and failed to provide adequate medical treatment", the court concluded that "without more" those allegations failed to state a claim, noting that the plaintiff "does not state that the delay in providing treatment for high blood pressure resulted in any actual harm, injury, or risk to [his] health and safety"). *See also* Coke v. Medical Department of Corrections and Community Supervision, 2018 WL 2041388, *5 (S.D.N.Y. 2018) ("a medical professional's discretionary decisions to not refer a patient or order certain tests do not constitute the level of culpability required for a deliberate indifference claim"); DeBlasio v. New York City Health & Hospital Corporation, 2020 WL 1489789, *3

(S.D.N.Y. 2020) ("[d]isagreements over . . . the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim").

Johnson's attempt to assert a deliberate indifference claim against Nurses Green and Szabo for their conduct beyond the 25-day period of his SHU confinement is similarly deficient. To the extent that he is attempting to assert such a claim for the allegedly year-long delay in being seen by a neurologist or six-month delay in receiving physical therapy, the Second Amended Complaint lacks any details concerning the role of Nurses Green and Szabo in those deprivations and he appears to have been transferred to the Orleans Correctional Facility upon his release from SHU. *See* Johnson's Response [37] at 3 ("[p]laintiff was transferred to Orleans . . . on March 19, 2020").

Johnson's opposition to the motion offers various additional allegations concerning the role of Nurses Green and Szabo in his care and their alleged deliberate indifference. *See* Johnson's Response [37] at 3-4. However, it is the Second Amended Complaint, not Johnson's opposition to the motion, that "must allege specific facts describing how each defendant from whom he seeks damages acted with indifference to his need for medical attention". Morales, 2022 WL 16635388 at *4.

**D.      Dismissal with Prejudice**

While "the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated", Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991), "where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice". Cortec Industries, Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991). At this stage I cannot say

that Johnson is unable to allege any facts sufficient to support a claim against Nurses Green or Szabo. *See* Porat v. Lincoln Towers Community Association, 464 F.3d 274, 276 (2d Cir. 2006) ("this circuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)"). However, he has already amended the Complaint twice. Since "*pro se* litigants are not granted unlimited opportunities to amend their pleadings", McLeod v. 1199 SEIU United Healthcare, 2019 WL 1428433, *13 (S.D.N.Y. 2019), any further amendment should address the issues discussed above, as I am not likely to allow any additional amendments thereafter.

Any Third Amended Complaint will completely supersede the Second Amended Complaint. For that reason, Johnson may wish to defer any amendment until the other defendants have appeared and any additional pleading deficiencies, if any, are identified.

## CONCLUSION

For these reasons, I recommend that defendants' motion to dismiss the Second Amended Complaint as against Nurses Green and Szabo [33] be granted, except to the extent that it seeks dismissal of these defendants with prejudice. Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the clerk of this court by March 8, 2024. Any requests for extension of this deadline must be made to Judge Sinatra. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal</u> <u>Wholesale Electric Co.</u>, 840 F.2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: February 20, 2024

/s/Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge